# Wolf & Son, Impleaded with Strahorn & Co., v. Shannon et al.

1. CHATTEL MORTGAGES—*Executions in Another State.*—Where mortgages of chattels are executed in another State, the rights of the mortgagees, when the property is brought into this State, are not determined entirely by the law of this State; on the contrary, when contracts are made in another State, and governed by the law of that State, if an enforcement of such laws will not contravene our criminal laws or sanction vice or immorality, they may be enforced in this State.

2. CHATTEL MORTGAGES—*Execution in Another State—Application of the Law.*—S., a farmer residing in Iowa, being indebted to W., of that State, gave him a chattel mortgage upon some cattle. Afterward S. agreed with W. that he would ship a portion of the cattle in the name of W. to R. Strahorn & Co., at Chicago, for sale. S. attempted to ship in the name of W., but in order to get a pass on the railroad he shipped them in his own name, etc. On arriving in Chicago he told Strahorn that the cattle belonged to W., and signed a written order to have the proceeds credited to W. After the cattle were delivered to Strahorn, Shannon & Co. sued out an attachment against S. and summoned Strahorn as garnishee. Strahorn sold the cattle as belonging to S. and credited the amount to W. less sufficient of the amount to await the event of the attachment suit. *It was held* that the laws of Illinois relating to chattel mortgages did not apply; that S. being indebted to W. had a right to place the cattle in the custody of Strahorn & Co. to be sold for the benefit of W., and having done so, informing them that they belonged to W., and with directions to sell them and credit the proceeds to W., Strahorn, by receiving the cattle with such knowledge and directions, became bailee, holding the cattle for the use of W.

3. GARNISHEE PROCEEDINGS—*In Attachment Proceedings—Admissibility of Judgment Against Principal Debtors.*—In a garnishee proceeding after judgment has been obtained against the principal debtor by personal service, it is proper to introduce in evidence the judgment, but not proper to read the record of it to the jury, as it tends to confuse them as to the issue before them. The original debtor having been personally served and a judgment rendered against him, whether there was a judgment against him and consequently whether the court had jurisdiction to proceed against the garnishees, was not a question to be submitted to the jury; but the court, if the fact was disputed, should have instructed the jury that judgment had been obtained against the principal debtor.

4. EVIDENCE—*Attachment—Conversation Between Original Debtor and Attaching Creditors.*—On the trial of the issue upon the petition of an intervening claimant in attachment, and garnishee proceedings, it is error to permit the introduction in evidence of conversations between the original debtor and the attaching creditors had in the absence of the intervening petitioner.

5. INSTRUCTIONS—*Applicable to the Case.*—Instructions should be applicable to the case in which they are given. It is error to direct in them the attention of the jury to issues not involved in the litigation.

**Memorandum.**—Attachment and garnishee proceedings. Commenced August 5, 1889. In the Superior Court of Cook County ; the Hon. THEO-. DORE BRENTANO, Judge, presiding. Petition of intervening claimants of the fund in dispute ; answer ; trial by jury ; verdict and judgment against intervenors ; appeal. Heard in this court at the March term, 1893. Reversed and remanded. Opinion filed April 19, 1893.

### STATEMENT OF THE CASE.

This is a garnishee proceeding. Suit in attachment was commenced by George W. Shannon et al. v. Edwin Strevell, to recover upon a promissory note of $400. The writ was issued August 5, 1889; Robert Strahorn & Co. were summoned as garnishees. On September 4, 1889, the appellants, Aaron Wolf and Charles C. Wolf, filed their petition, claiming the moneys in the hands of the garnishees, and asking that they be admitted as parties to the suit. The plaintiffs recovered judgment by default, against Edwin Strevell, on September 25, 1889, for $445.95. The appellants were admitted as parties to the garnishee proceeding. The issues were tried by a jury, and judgment rendered December 3, 1892, in favor of the plaintiffs, and from this judgment the appellants appeal.

### APPELLANTS' BRIEF, HOYNE, FOLLANSBEE & O'CONNOR, ATTORNEYS.

Appellants contended that an attaching creditor can acquire through his attachment no higher or better rights to the property or assets attached than the defendant had when the attachment took place, unless he can show fraud or collusion by which his rights are impaired. Sheldon v. Hinton, 6 Brad. 216; Carr v. Waugh, 28 Ill. 418; Hudson v. McConnel, 12 Ill. 170.

An equitable assignment will secure the property against attachment, though no notice be given prior to the attachment to the person holding the property, if given in time to enable him to bring it to the attention of the court before

judgment is rendered against him as garnishee. Much more will an assignment be effectual, where notice of it has been given to the garnishee. Drake on Attachment, Sec. 528.

Where a consignee received stock and was informed at the time that the proceeds were to be placed to the credit of a third person, this was an instruction practically accompanying the delivery of the stock, and that in such case the consignees could not hold the proceeds even on a factor's lien. · Darlington v. Chamberlin, 20 Brad. 443; Fisher v. First National Bank of Shenandoah, 37 Ill. App. 333.

The instructions for the plaintiff below do not apply to the case.

A chattel mortgage is a creature of the statute, and the law of Illinois does not regulate chattel mortgages in Iowa. The property remained in the hands of the mortgagor in Iowa, not in Illinois. If this was not fraudulent in Iowa the instructions are wrong. It has never been held in Iowa to be fraudulent for the mortgagor to retain possession of chattel property after the maturity of the indebtedness. The statutes of the two States are entirely different. Our statute expressly provides that a chattel mortgage shall be good " until the maturity of the debt, not exceeding two years." Sec. 4, Ch. 95, R. S. Ill.

The statute of Iowa provides, " no sale or mortgage of personal property, where the vendor or the mortgagor retains actual possession thereof, is valid against existing creditors or subsequent purchasers without notice, unless a written instrument conveying the same is executed, acknowledged like conveyances of real estate, and filed for record with the recorder of the county where the holder of the property resides." McClain's Code of Iowa, Sec. 3094.

The mere retention of the possession by the mortgagor is neither *per se* fraudulent or a badge of fraud ʼn law. Hughes v. Cory, 20 Iowa, 399.

Appellees' Brief, Miller & Starr, Attorneys.

Appellees contended that the transfer of personal property situated in a different state from that of the party's

domicile, though in the absence of local rules, governed by the law of the domicile or of the place of contract, yet when local rules exist and local rights are affected, will always be controlled by the local rules. Story, Conflict of Laws, 8th Ed., Sec. 383, and especially 387, 389, 390; Lanfear v. Sumner, 17 Mass. 110; Lamb v. Durant, 12 Mass. 54; Moore v. Bonnell, 2 Brown 92; Herrick v. King, 4 Green (N. J.) 80; Bentley v. Whittemore, 4 Green (N. J.) 462; Oliver v. Townes, 14 Martin, 93, 102; Ramsay v. Stevenson, 5 Martin 23; Fish v. Chandler, 7 Martin 24.

A mortgagee can not pursue the proceeds of the sale of mortgaged property, made by the mortgagor, as against third parties. The party receiving the money has a right to assume that the mortgagee will follow the cattle, that is, the *res* to which his mortgage applies, and not the money. Jones, Chat. Mort., 3d Ed. 464; Burnett v. Gustafson, 54 Ia. 86.

OPINION OF THE COURT, WATERMAN, J.

Edwin Strevell, a farmer, residing in Albion, Iowa, being indebted to A. Wolf & Son of that State, to secure them, gave a chattel mortgage for $8,000 upon certain cattle in Iowa.

About the first of August, 1889, Strevell agreed with A. Wolf & Son that he would take a portion of the cattle and ship them in the name of Wolf & Son to R. Strahorn & Co. at Chicago, for sale.

August 4th Strevell took the cattle to the railroad station, told the agent they were the property of Wolf & Son, and were to be shipped in their name.

The agent declined to issue a shipper's pass to any one save the parties in whose name the cattle were shipped; and to obtain such passes, Strevell, without communicating with Wolf & Son, shipped two cars of the cattle in his own name and one car in the name of a Mr. Bailey, who accompanied him to Chicago.

Strevell and Bailey arrived in Chicago on the morning of August 5th, and went immediately to the place of business of Strahorn & Co., where, at about 9 A. M., they informed Mr.

Prescott, the bookkeeper for Strahorn & Co., that the cattle belonged to A. Wolf & Son, and told him that the proceeds were to be credited to Wolf & Son. Strevell also gave to the bookkeeper a written order from Wolf & Son, stating where the proceeds of the cattle were to be deposited, and Strevell and Bailey also signed a written order, directing that the proceeds be paid to Wolf & Son.

. Appellees, Shannon & Co., in the forenoon of August 5th, sued out an attachment against Strevell, who was indebted to them, summoning Strahorn & Co. as garnishees; the attachment writ was delivered to the sheriff at 10:30. Some time in that forenoon this writ was served on Jesse Sherwood, a member of the firm of Strahorn & Co., and he, Sherwood, was personally informed at the same time that the proceeds of the cattle were to be sent to Wolf & Son.

The cattle, being shipped in the names of Strevell and Bailey, were sold by Strahorn & Co. as belonging to Strevell. The net proceeds of the cattle were $2,711.69; of this sum Strahorn & Co. paid to Wolf & Son $2,161.69, retaining the sum of $550, to await the result of the attachment proceedings. Judgment for $445.95 was obtained by appellees against Strevell. Upon the trial of the attachment issue, the court gave the following instructions to the jury:

. 1. " The court instructs you, gentlemen of the jury, that for a person claiming goods or cattle under a chattel mortgage, to permit them to remain in the hands of the mortgage debtor, after the mortgage debt becomes due, is a fraud in the eye of the law upon the creditors of the mortgage debtor, and will render the property liable to be taken as that of the debtor by his creditors. And if you believe from the evidence in this case that the intervening creditor, Wolf, permitted the cattle in question to remain in the hands of Strevell, the mortgage debtor, for several months after the mortgage debt became due, and that Strevell dealt with them as his own, then they are liable to be taken as his own by his other creditors; and if you find from the evidence that Strevell so dealt with the cattle, and that the plaintiffs, Shannon & Co., here garnisheed the proceeds of cattle so

dealt with by Strevell in the hands of his consignee, then if you so find all these circumstances from the evidence, you must find the issue for the plaintiff."

2.  "The court instructs you, gentlemen of the jury, that it is a fraud for a mortgage creditor to permit his mortgage debtor to deal with the mortgaged cattle as his own, and sell and dispose of them; and by so permitting the mortgage debtor to sell and dispose of them, the mortgage creditor loses the right to control the property, or its proceeds; and if you find from the evidence that the mortgage creditor, Wolf, thereby was guilty of fraud, which subjects the cattle and proceeds of such sale to the claims of Strevell's creditors; and if you find that the plaintiffs, Shannon & Co., being creditors of Strevell, attached the proceeds of such sale, you must find the issue for the plaintiff."

3.  "The court instructs you that by the law of Illinois, in order to make good his claim under a chattel mortgage, the person seeking to enforce the same must proceed with diligence, to seize the property and subject it to his claim, within a reasonable time after the same becomes due; and a failure to exercise such diligence by the mortgagee, is a waiver of his rights under the mortgage as against the attaching creditors of the debtor. And the court further instructs you, that if you believe from the evidence that the mortgagees, Wolf, for an unreasonable length of time after the mortgage became due, failed to seize and subject the property to his lien (and what is an unreasonable delay, is for you to say from the evidence), such delay would be a waiver of the mortgagee's rights under the mortgage as against the attaching plaintiff and if you so find from the evidence, then the issues are for the plaintiffs."

There was a verdict and judgment for appellees, from which judgment Wolf & Son prosecute this appeal.

The principal objection to these instructions is, that, not being applicable to this case, they directed the attention of the jury to issues not involved in this litigation.

Wolf & Son's claim to the proceeds of these cattle is not dependent upon the fact that they had a chattel mortgage

thereon.   Their right to such proceeds can not, therefore, be lost because they failed to exercise the diligence required by the laws of this State, of mortgagees of chattels.

Where chattel mortgages of chattels are executed in another State, the rights of the mortgagees, when the property is brought into this State, are not determined entirely by the law of this State; on the contrary, when contracts are made in another State, and hence are governed by the law of that State, if an enforcement of the laws of such foreign State will not contravene our criminal laws, or sanction vice or immorality, such laws may be enforced in this State. Mumford v. Canty, 50 Ill. 370; M. C. Ry. Co. v. The Chicago, M. & Lake Shore Ry. Co., 1 Brad. 399–410; Clough v. Kyne, 40 Ill. App. 234.

The question of within what time Wolf & Son were, under their chattel mortgage, bound as against creditors of Strevell to take possession of the cattle, does not, as before said, arise in this case, because Wolf & Son are not compelled to claim under their mortgage.   If they were, had the laws of Iowa been introduced in evidence, they might have had an important bearing upon such question.   Treating, therefore, Strevell as the absolute owner of these cattle when they were shipped, what are the rights of the parties to this suit? Being indebted to Wolf & Son, Strevell had a right to place these cattle in the custody of Strahorn & Co., to be sold for the benefit of Wolf & Son; this, so soon as he arrived in Chicago, he did; thereby Strahorn & Co., by receiving the cattle with such knowledge and direction, became bailees, holding the cattle for the use of Wolf & Son.   Jones on Liens, Secs. 59, 60, 61.

Not only was it the right of Strevell to do as he did, but as an honorable man, he could not have done otherwise; he had obtained the cattle for shipment by Wolf's consent, had agreed with him that they should be shipped in his, Wolf's name, and sold for his, Wolf's benefit; the beneficial ownership of the cattle was in Wolf & Son, and it was in the highest degree right and proper that Strevell should fulfill his promise.

It is immaterial that Sherwood, of Strahorn & Co., sold the cattle as Strevell's, or if he, Sherwood, did not learn of the direction to pay the proceeds to Wolf & Son, until at the same time he was served with the attachment suit.

The bookkeeper received the consignment, and with it the information that the cattle belonged to Wolf & Son; and also an order from Strevell and Bailey to pay the proceeds to Wolf & Son; to receiving the cattle under such order, no objection was made; thenceforth the cattle were in the custody of Strahorn & Co. for the use of Wolf & Son. Strevell's control over them or their proceeds was gone. Jones on Liens, Sec. 61; McCausland v. Wheeler Bank, 43 Ill. App. 381; Hall v. Bank, 133 Ill. 386.

If, after giving this information and making this order, Strevell had changed his mind and directed the proceeds to be paid to appellees, Strahorn & Co. would not thereby have been released from their obligation to pay to Wolf & Son in accordance with the notice of ownership and direction previously given. Morton v. Naylor, 1 Hill, 583; Israel v. Douglass, 1 H. Black, 239–242; Lowery v. Steward, 25 N. Y. 239; Jones on Liens, Sec. 60.

The question presented in this case is not what the rights of appellees would have been had they attached these cattle when they were in the custody of Strevell, but what they are; the attachment writ not having been issued until the cattle were in the possession of Strahorn & Co. under notice that they belonged to Wolf & Son, and with orders from the consignor to sell and pay the proceeds to Wolf & Son.

Appellees introduced in evidence the judgment obtained by them against Strevell; this was proper, but counsel then, against the objection of appellants, proceeded to read the record of the same to the jury; this should not have been permitted; thereby not only was valuable time of the court wasted, but such reading tended to confuse the jury as to the issue before them. Strevell had been personally served and a judgment had been rendered against him; whether there was a judgment against him and consequently whether the court had jurisdiction to proceed against the garnishees

was not a question to be submitted to the jury, but the court, if such facts had been disputed, should have instructed the jury that judgment had been obtained against Strevell, and that the court had jurisdiction to proceed against the garnishees.

Nor should conversations between Strevell and appellees or their agents, had in the absence of appellants, have been permitted to be given in evidence.

Whether at some previous time Strevell had promised to ship these or other cattle to appellees, or had promised to pay his note to them, was immaterial.

Appellees acquired neither interest in, nor right to these cattle or their proceeds, because of any conversation by them had with Strevell before their shipment; they had in September, 1889, obtained judgment against him upon his note, and this having been had, upon what theory the court admitted evidence of the promise of Strevell, made in May of that year, to pay such note, it is difficult to understand.

The judgment of the Superior Court is reversed and the cause remanded.