## Farmers & Merchants Bank v. Albert C. Arnold, Zachariah C. Proctor and Lyman W. Arnold.

1. Chattel Mortgages—*Made in Missouri—Rights of Parties Under.*—The rights of parties claiming under a chattel mortgage made in Missouri, are governed by the law of that State.

2. Same—*Identity of the Property.*—The identity of the property covered by a chattel mortgage may be shown by parol.

**Bill for an Accounting, etc.**—Appeal from the Superior Court of Cook County; the Hon. William G. Ewing, Judge, presiding. Submitted at the March term, 1895, of this court. Affirmed. Opinion filed April 22, 1895.

W. A. Hamilton, attorney for appellant.

Francis A. Riddle and Frank B. Dyche, attorneys for appellees.

Mr. Justice Gary delivered the opinion of the Court.

The appellant filed a bill to obtain the proceeds of sixty-eight head of cattle sold by the firm of Arnold, Proctor & Co., commission merchants at the stock yards in Chicago.

It is certain that the cattle were shipped from Missouri to the firm, by one Lyman W. Arnold, in the name of his mother-in-law, Sarah Topping, for the purpose of paying her money that he owed her.

The appellant claims that the cattle were part of those described in a mortgage by Lyman W. Arnold to the bank, upon "one hundred and thirteen (113) head of steer cattle, all dehorned, thirteen (13) of which are 'yearlings,' coming 'twos,' and the remainder are 'twos' and 'threes,' all purchased by me of McCausland, Hoag & Co., of Chicago, Illinois."

The rights of parties claiming under a chattel mortgage made in Missouri are governed by the law of that State, and the identity of the property may be shown by parol. Cases cited in Clough v. Kyne, 40 Ill. App. 234. But the

obstacle in the way of the appellant here is that no such proof is in the case. There is no testimony of what occurred when the mortgage was made, other than that of the cashier of the bank, that he then "had a man examine the security and he reported it sufficient." One of the directors of the bank testified that he went to "Shelbina," there saw a Mr. Lair, who showed a "bunch of cattle," and said that they were "the McCausland & Hoag cattle." Lair, as a witness, denied that statement. The director further testified that he saw the cattle in the stock yards; they looked like those he saw "in Shelby county," and to the best of his knowledge, they were the same. There is no other evidence on that point for the appellant, except the testimony of Lyman W. Arnold, who said that he did not think that more than ten or twelve of the sixty-eight could have been "McCausland & Hoag cattle."

The dealings between the bank and Lyman W. Arnold were many and irregular. Upon the whole testimony it is argued by the appellees, not without reasonable ground, that the mortgage had been paid; but we will not determine that point. The evidence shows that six or seven months after the mortgage was made, Lyman W. Arnold and Lair, with the assent of the bank, had a transaction by which Arnold delivered to Lair about one hundred and ninety head of cattle, among which were about seventy-five of those included in the mortgage, for which Lair gave to Arnold $5,372 cash and a note for $3,000 due in one hundred days; which was the price of the cattle, if sold, as Arnold and Lair say they were, at four cents a pound. At the same time Arnold and Lair agreed that at the end of one hundred days, Arnold was to take the cattle back at five cents a pound, and about one hundred days thereafter, Arnold did receive from Lair two hundred and ten cattle; part of them at five cents and part of them at four and a quarter cents a pound.

The appellant claims that this transaction was only "a feeding contract."

On this record it can not be told on what ground the court

below went in holding that Mrs. Topping was entitled to the proceeds in controversy; but as there is no affirmative evidence of identity, that which is nearest to such evidence being the testimony of Arnold, that he did not know and did not think, the conclusion of the court—if that was its conclusion—that the identity was not made out, can not be held erroneous.

And if the transaction with Lair, being with the assent of the bank, was a sale, then the lien of the mortgage was gone.    Whether the specific findings of the court in favor of Mrs. Topping are in the right words " is a matter of no consequence."    Potter v. Gronbeck, 117 Ill. 404–9.

On this record she seems to have been entitled to the money, as the court decided.    She is dead and her administrator has appeared here in her place.

The decree of the Superior Court is affirmed.