W. L. Harrison, and Leo Harrison, Partners Doing Business Under the Firm Name and Style of Harrison Motor Company, Plaintiff-Appellant, v. State Bank of Hull, Defendant-Appellee.

Gen. No. 10,076.

Third District.

October 16, 1956.

Rehearing denied November 26, 1956.

Released for publication November 26, 1956.

Schimmel and Schimmel, of Pittsfield, and Rendlen & Rendlen, of Hannibal, Missouri, for appellants.

Weaver and Grigsby, of Pittsfield, for appellee.

JUDGE ROETH delivered the opinion of the court.

Plaintiff-appellant filed suit against defendant-appellee for the alleged wrongful conversion of items of farm equipment, claiming damage in the sum of $3,000. Defendant answered and set up a prior claim to the goods. A trial resulted in a finding that defendant had a prior claim to the goods and judgment was entered for plaintiff in the amount of only $827.32, under a computation hereinafter set out, from which this appeal was perfected.

The facts giving rise to the controversy so far as they bear upon this appeal, are not in dispute. Harrison Motor Company, plaintiff, is a dealer in automobiles and farm machinery in Hannibal, Missouri. On November 12, 1950 one Harry Thomason, who lived at Hull in Pike County, Illinois, purchased from Harrison Motor Company two pieces of farm machinery. He executed at the office of plaintiff in Hannibal, Missouri an instrument denominated a conditional sales installment note which is the usual combination note and conditional sales contract. The note was for $1,713.05 and was payable at the office of Harrison Motor Company in Hannibal, Missouri on December 1, 1951. The machinery is described in the contract and by the terms of the contract, title was retained by Harrison Motor Company. The contract provided that the machinery was to be kept in Hull, Pike County, Illinois. Thereafter the machinery was delivered to the farm of Thomason in Pike County by the plaintiff. Two payments on the note were subsequently made by Thomason, one of $230 on July 9, 1952 and the other of $271.39 on October 9.

On April 11, 1951 Thomason purchased from plaintiff, two additional pieces of farm machinery. The transaction was handled in the same manner as above noted as to the sale on November 12, 1950. The amount of the note was $370 payable November 15, 1951. No payments were ever made on this note.

On July 11, 1951 Thomason purchased from plaintiff two additional items of machinery. This transaction was likewise handled as was the sale of November 12, 1950. The amount of this note was $1,040 payable in equal installments on November 1, 1951 and November 1, 1952. One payment of $520 was made on July 9, 1952.

In their brief counsel for plaintiffs concede that on the face of the contracts appears *"The machinery herein described has been received in good order and condition* and will be kept in town of Hull, County of Pike and State of Illinois." (Emphasis supplied.)

On the back of each of the conditional sales installment notes there is typed the following:

"State of ——— ⎫ SS
County of ——— ⎭

"The within instrument was filed recorded in this office on the ——— day of ——— 19— and indexed in Book ——— page ——— as No. ———.

Signature and Official Title."

The instruments were never recorded so that the certificates are blank.

Thereafter, Thomason became indebted to defendant, a bank at Hull, Illinois, and on December 24, 1952 he executed his note for $2,500 payable to defendant one year after date. At the same time, he executed a chattel mortgage to defendant to secure this note covering the machinery purchased from plaintiff together with other machinery. This chattel mortgage was recorded in Pike County, Illinois on December 26, 1952. On January 5, 1953 Thomason gave the defendant a financial statement, listing among his assets the property covered by the chattel mortgage and listing as his liabilities a $3,100 real estate mortgage, the note to defendant and $600 "due on combine."

473

The defendant first learned of the conditional sales installment notes held by plaintiff on March 15, 1954. On March 18, 1954 it took possession of the property covered by the chattel mortgage, gave notice of a sale to be held April 13, 1954 and sold the property at public auction on that date.

The amount of the judgment, $827.52 in favor of plaintiff, is based upon the following facts appearing in evidence, to-wit: The gross amount of the sale held April 13, 1954, was $3,753. The property included in the chattel mortgage but not covered by the conditional sales contracts sold for $1,583 and the property covered by the conditional sales contracts sold for $2,170 making a total proceeds of the sale $3,753. There was due defendant on April 13, 1954, as principal and interest on its notes, $2,553.48 and costs of the sale were $177 making a total due defendant on date of sale of $2,730.48 and after applying on that amount the sum of $1,583 realized from sale of property not included in the conditional sales contracts there was a balance due defendant from the sale of the property included in the conditional sales contracts the sum of $1,147.48.

The property in conditional sale contract of November 12, 1950, the oldest of the contracts, sold for $1,450 and after deducting therefrom the balance of $1,147.48 due defendant there remained $302.52 due plaintiffs from the property involved in this contract.

The property in conditional sale contract of April 11, 1951 sold for $195 and that in conditional sale contract of July 11, 1951, for $525 making a total due plaintiffs of $1,022.52 of which plaintiffs retained for property purchased by them $195 as per agreement made that day and thus leaving due plaintiffs $827.52.

The primary question for determination is whether under the foregoing facts, plaintiff's reservation of title in the conditional sales contract was good as

against the defendant or whether defendant's chattel mortgage established a first and prior lien in favor of defendant. Plaintiff contends that whether a conditional sales contract is effective to enable the vendor to retain title is determined by the law of the state where the chattel is at the time of the sale, and if by the terms of the agreement for a conditional sale the chattel is to be delivered by the vendor to the vendee in another state before the transaction is complete the law of the state where the transaction is completed by delivery to the vendee and not that of the state where the transaction was initiated by the contracts determines whether or not the vendor retains title to the property; and that since Illinois recognizes the validity of conditional sales contracts without recording these contracts are valid as against defendant bank. Defendant contends that the ultimate object of a note is the payment of money and therefore is to be performed at the place of payment; that a note executed, delivered and to be performed in a state other than Illinois, is to be governed and controlled by the laws of such other state; that whether a conditional sale is effective to enable the vendor to retain title is determined by the law of the state where the chattel is at the time of sale; and that since the conditional sales contracts were not filed and recorded in accordance with the statutes of Missouri they are not valid as to subsequent purchasers in good faith or creditors.

The two pertinent sections of the Revised Statutes of Missouri are Sections 428.100 (3515) and 443.460 (3436). Section 428.100 provides in substance that conditional sales contracts shall be *void* as to subsequent purchasers in good faith and creditors *unless evidenced by writing executed, acknowledged and recorded as provided in cases of mortgages of personal property.* Section 443.460 provides in substance that no mortgage of personal property *shall be valid as to*

*any party,* other than the parties thereto, unless filed in the recorder's office in the county where the mortgagor or grantor resides, *or,* if the grantor be a nonresident, then in the recorder's office of the county where the property was situated at the time the mortgage was executed. (Emphasis supplied.) Thus under the statutes of Missouri, a conditional sales contract must be recorded to be valid as to subsequent purchasers in good faith and creditors, while the contrary is true in Illinois.

Reference is made in the briefs of counsel to certain statements appearing in the Restatement, Conflict of Laws. There, it is stated, that the rules, where there is a conflict of law, respecting conditional sales are analagous to the rules dealing with chattel mortgages. Section 273–278. Thus the general rule is stated to be that the validity and effect of a mortgage of a chattel are determined by the law of the state where the chattel is at the time when the mortgage is executed, Restatement, Conflict of Laws, Section 265, and by analogy, whether a conditional sale is effective to enable the vendor to retain title is determined by the law of the state where the chattel is at the time of the sale, Restatement, Conflict of Laws, Section 272. One exception is noted in the sections above, namely a situation where the conditional sales contract, *by its terms,* provides for delivery of the chattel by the vendor to the vendee before the transaction is complete, in which event the law of the state where the contract is completed, i. e., where delivery is made, applies. (Emphasis supplied.) Recognizing these rules, as applying to chattel mortgages, are the Illinois cases of Doumas v. Mormella, 251 Ill. App. 397; Bridges v. Barrett, 126 Ill. App. 122; Farmers & Merchants Bank v. Arnold, 58 Ill. App. 349; Wolf & Son v. Shannon, 50 Ill. App. 396, and Mumford v. Canty, 50 Ill. 370.

Counsel for plaintiff relies principally on Ford Motor Co. v. National Bond & Investment Co., 294 Ill. App. 585, 14 N.E.2d 306. In that case the Court noted the above rules as set out in Restatement, Conflict of Laws. In that case an Illinois auto dealer purchased cars from Ford Motor Co. The contract specifically provided that it was a Michigan contract to be construed according to the laws of Michigan. It contained a reservation of title clause in Ford Motor Co. and specifically provided for delivery of the cars in Chicago. After delivery, the dealer executed trust receipts covering the cars to a third person.

The holder of the trust receipts subsequently undertook to assert a prior claim to the cars. One of the contentions urged was that, the contract between the dealer and Ford Motor Co. being a Michigan contract, under the laws of Michigan it would be construed as a chattel mortgage and was therefore required to be recorded in Illinois. The law of Michigan did not require a recording of this agreement. The Court resolved the question in this language:

"Under Michigan law, although the instrument is held to be a chattel mortgage, recording is not necessary. On the other hand, if we regard the law of Illinois as applicable the agreement is one for a conditional sale which by the law of Illinois need not be recorded. Therefore, whether we regard the law of Michigan or of Illinois as applicable, and whether we regard the agreement as a chattel mortgage in Michigan or a conditional sales agreement in Illinois, it was unnecessary that the agreement be recorded."

We do not regard this case in point on the issues here involved.

Plaintiff also calls attention to designation of the instruments as indicating that they are Illinois con-

tracts. In the upper left hand corner of each instrument there appears the following:

"CONDITIONAL SALES INSTALLMENT NOTE for Illinois"

In the upper right hand corner there appears:

"Form T–150–2–Ill" .

A heavy line separates these from the body of the note and contract. Obviously the foregoing are not a part of the contractual provisions of the instruments. They are simply words and symbols used to designate a form that is approved in Illinois for use in sales made in Illinois. Nor do we think that the fact that the instruments provide that the property was to be kept in Illinois is tantamount to a provision for delivery of the chattel by the vendor to the vendee at that place, before the transaction is complete. Furthermore as heretofore noted it is conceded that, in each instance, delivery was acknowledged upon execution of the contracts. In passing, we might observe that a strong inference might readily be drawn from the fact that each instrument bears the typewritten certificate heretofore noted. This is some indication that the vendor knew of the recording requirements of the Missouri statute and expected to comply with those provisions.

■■ Defendant cites Walker v. Lovitt, 250 Ill. 543; Burr v. Beckler, 264 Ill. 230; Harris v. American Surety Co., 372 Ill. 361; Evans v. Anderson, 78 Ill. 558; Barth v. Farmers & Traders Bank, 195 Ill. App. 318; Frankel v. Allied Mills, Inc., 369 Ill. 578; Shircliff v. Dixie Drive-In Theatre, Inc., 7 Ill.App.2d 370; which announce the general rule that the validity, construction and obligation of a contract must be determined by the law of the place where it is made or is to be performed. These cases further hold that the law of the place becomes a part of the contract and, the Courts of another jurisdiction will enforce it in ac-

cordance with its legal effect where made or to be performed. These cases apply the rule to varying types of contracts. Under this rule a note executed and made payable in a foreign state is governed by the laws of that state. However, in the case at bar we are not dealing with the validity of the notes but rather with the validity of the conditional sales contracts. The rules as stated in Restatement, Conflict of Laws are the adaptations of the general rules to the specific types of contracts mentioned.

Our independent search of the authorities discloses the case of Lustig v. Montgomery, 236 Mo. App. 374, 156 S.W.2d 782, a case not cited by either counsel, wherein the court of review in Missouri construed the sections of the Missouri statute hereinbefore noted, on an identical state of facts. There an automobile, which was the sole subject of the law suit, was sold to Pierson by the Dorn Motor Company, whose place of business was on October 6, 1939, the date of said sale, located in the City of St. Louis, Missouri. Pierson was on the above-mentioned date, a citizen and resident of the State of Illinois. The sale was made in the City of St. Louis, where the automobile was then located. At the time of the sale Pierson executed and delivered to Dorn Motor Company a note and conditional sales contract on said automobile. Immediately after completion of the above transaction Pierson removed said automobile to Jerseyville, Jersey County, Illinois, his home. It was used in the business of Pierson. The conditional sales contract was never filed or recorded in Missouri or in Illinois.

The controversy arose in this case between an attaching creditor of Pierson and the holder of the conditional sales contract. The plaintiff, the attaching creditor, contended that she was entitled to the automobile as against the conditional vendor for the reason that the conditional sales contract was void as to

third persons, it not having been filed in the office of the Recorder of Deeds in St. Louis, Missouri. The two sections of the Missouri Statute which she relied upon are the same sections hereinbefore referred to. The conditional sales vendor contended that the sections of the statute did not apply for the reason that Pierson was a resident of the State of Illinois; that immediately after he purchased the automobile its situs became the same as that of its owner; and that it was not "situated" in St. Louis, Missouri, within the meaning of the word "situated," which it urged meant a permanent location.

The conditional vendor also contended that since the laws of Illinois do not require the recording of conditional sales contracts in order to render them effective as against third parties, it was entitled to enforce the conditional sales contract irrespective of the Missouri statutes.

In disposing of these respective claims, the Court said:

"In the case at bar the automobile was sold by a Missouri owner, in the State of Missouri; and the conditional sales contract was a Missouri contract, made in Missouri and to be performed in Missouri. It is therefore to be construed according to the law of the state where made. (55 C. J. 214.) We think that sections 3486 and 3515, supra, apply to this transaction. The italicized portion of section 3486 specifically makes it applicable; and the conditional sales contract, not having been recorded in the City of St. Louis, is not enforceable against a third party, under the terms of the statute."

In connection with this opinion the Court cites Patton v. Phoenix Brick Co., 167 Mo. App. 8, 150 S. W. 1116, loc. cit. 1117, which apparently involved an unrecorded conditional sales contract which antedated

480

the chattel mortgage and noted that by the language of that case the Court said:

"But it was not recorded. It was void as to creditors prior or subsequent, *even with notice.*"

Our search reveals no case which either modifies or overrules the holding in the foregoing case. We are of the opinion that the construction placed upon these same sections of the Missouri statutes, here involved, by the Missouri courts, should be our guide in deciding the question presented to us by this appeal.

■ The contracts between plaintiff and Thomason were conditional sales contracts in Missouri and their validity is to be tested by the law of that state. To be valid against subsequent purchasers in good faith and creditors, the contracts were required to be recorded by the laws of Missouri. Failure to record these contracts in accordance with these statutory provisions is fatal to the seller's remedy against a citizen of our state who is within the specified class. This holding makes it unnecessary to determine the other point raised by defendant.

The judgment of the Circuit Court will be affirmed.

Affirmed.

REYNOLDS, P. J. and CARROLL, J., concur.