SAVANNAH FIRE & MARINE INS. CO. v. PELZER MANUF'G CO. et al.

(Circuit Court, D. South Carolina. February 26, 1894.)

1. SUBROGATION—COVENANT IN LEASE.

A warehouse was built on leased ground belonging to a railroad company, and the warehouseman covenanted in the lease that, for any damage to house or contents by fire caused by the railroad company, the company should not be liable unless such fire was due to its negligence. *Held,* that, though Gen. St. S. C. § 1511, makes railroad companies liable for fires set by them, without regard to the question of negligence, this covenant is binding on the insurer, who is subrogated to the rights of the warehouseman.

2. RAILROAD COMPANIES—FIRES—NEGLIGENCE—EVIDENCE.

The fact that the fire occurred immediately after the passage of a locomotive to and fro alongside the warehouse is not sufficient to show

negligence on the part of the railway company, where there is evidence that the company used all reasonable precautions to prevent fires, and that its locomotive was equipped with all proper appliances generally found effective to prevent the escape of sparks.

In Equity. Bill by the Savannah Fire & Marine Insurance Company against the Pelzer Manufacturing Company, the Columbia & Greenville Railroad Company, and others. Bill dismissed.

Julius H. Heyward and Mitchell & Smith, for complainants.

Cothran, Wells, Ansel & Cothran, Smythe & Lee, Abney & Thomas, Haynsworth & Parker, and T. Q. & A. H. Donaldson, for defendants.

SIMONTON, Circuit Judge. The facts of this case, as developed in the record and testimony, are these: The Pelzer Manufacturing Company had on storage in the warehouse of Cely Bros., in Greenville, 1,000 bales of cotton, estimated to be of the value of $45,000 and more. The rate of storage was 25 cents per bale, insured. Cely Bros. insured the cotton for nearly its full value in policies taken out in their own name in various companies of their own selection. The policies were concurrent, covering all the cotton in the warehouse, each policy being for a fixed amount. The warehouse was erected on lands of the Columbia & Greenville Railroad Company, upon or next adjacent to their right of way. The land was held by Cely Bros. under lease for the term of 20 years from the railroad company at a nominal rent. This covenant was inserted in the lease, and was a part of the consideration thereof:

"And it is further covenanted and agreed, by and between the parties hereto, that during the continuance of this lease the Columbia and Greenville Railroad Company, its successors and assigns, shall not in any wise be responsible for any loss or damage to the said building, or the contents thereof, from fire communicated by the locomotive engines of the said company, its successors or assigns, or originating within the limits of the right of way of the said Columbia and Greenville Railroad Company, its successors or assigns; and all such loss or damage shall be borne by the said Cely Brothers, their executors, administrators, and assigns."

This lease was dated 15th December, 1882. Adjacent to the warehouse, which was filled with the cotton of the Pelzer Manufacturing Company, was a platform extending towards, and almost up to, the track of the Columbia & Greenville Railroad Company. On this platform, at the time of the fire hereinafter mentioned, were a number of bales of cotton, the property of other persons than the Pelzer Manufacturing Company. On 15th March, 1889, before noon, while a locomotive of this railroad company was passing to and fro on the track of the railroad, and alongside this platform, a fire broke out in the cotton on the platform. This fire was thereby communicated to the cotton in the warehouse, and consumed all the bales therein and on the platform. Very shortly after the fire, Cely Bros. assigned all the policies held by them, covering cotton in the warehouse, to the Pelzer Manufacturing Company, who at once notified each insurance company of this fact,

made proofs of loss, and demanded payment. Three of these insurance companies——the Springfield Fire & Marine Insurance Company, the Rochester German Insurance Company, and the Continental Insurance Company—paid the losses on demand, and each of them obtained an assignment to the amount of the payment made by each of them, respectively, of that much of the claim which the Pelzer Manufacturing Company might have against the railroad company because of the loss by fire. The other companies, among them the complainant in this suit, resisted payment, chiefly upon the ground that Cely Bros., in whose name the policies were issued, had released the railroad company from a claim for damages, and had concealed this fact when the insurance was effected. After protracted litigation the decisions were adverse to the insurance companies, and each of them has paid its share of the loss. The Savannah Fire & Marine Insurance Company, one of the litigating companies, now files this bill of complaint, in behalf of itself and all other insurance companies in like plight, averring that the Pelzer Manufacturing Company, as owner of the cotton, has a claim for damages against the railroad company by reason of its destruction under the circumstances stated, and that each of them is entitled to subrogation, pro tanto, on payment of loss, to these rights; and that, inasmuch as the tort is indivisible, this claim of damages must be made in the name of the Pelzer Manufacturing Company for the use of the insurance companies. The bill prays that an account be taken of the number of bales of cotton covered by the policies of insurance and the value thereof, and that the Columbia & Greenville Railroad Company be required to pay the same; that the same, when paid, be distributed among the parties entitled thereto, according to their respective rights and interests; and for general relief. To this bill the Columbia & Greenville Railroad Company, and its lessee, the Richmond & Danville Railroad Company, the Pelzer Manufacturing Company, two of the insurance companies who have paid, and Cely Bros. are defendants and have answered.

The position of the complainant is this: Cely Bros. were either the insurers of the cotton to the Pelzer Manufacturing Company, and so protected themselves by reinsuring in these several insurance companies, or they effected the several policies of insurance as agents of the Pelzer Manufacturing Company in that behalf, and for its use and benefit. If they were insurers, then, upon payment of the loss, they became subrogated to any rights the Pelzer Manufacturing Company may have against the railroad company; and, inasmuch as the actual payment was made by these companies, they, in turn, became subrogated to all the rights of Cely Bros., and, through them, to the rights of the Pelzer Manufacturing Company. If Cely Bros., in effecting the policies, acted as agents for and in behalf of the Pelzer Manufacturing Company, then the insurance companies paying the loss become subrogated directly to the rights of the Pelzer Manufacturing Company. The answer of the railroad companies to this contention is that if Cely Bros. were the insurers, and the complainant and the other insur-

ance companies their reinsurers, and so work out their subrogation through Cely Bros., they are bound by the release and covenant executed by Cely Bros. to the railroad company, above set out; or if Cely Bros., by authority of the Pelzer Company, in their own name effected these policies for the Pelzer Company, they, and their principals through them, had full notice and knowledge of this release, and are bound by it. This is met by the complainant with this contention: The release in question was directed to and released the liability imposed on railroad companies by section 1511, Gen. St. S. C., holding them responsible for the destruction of property by fire communicated from the locomotive on, or originating on, the right of way, without regard to the question of negligence; and that it does not cover the destruction of property by fire on or adjacent to the right of way, occasioned by the negligence of the company, its officers and agents; that the language of the release, being in the words of the statute, shows this, and that, were it otherwise, a release of the railroad company from the consequences of its own negligence is against public policy, and void. Subrogation puts the person subrogated in the shoes of him to whom he is subrogated, and gives him the same rights,—neither more nor less. Phoenix Ins. Co. v. Erie & W. Transp. Co., 117 U. S. 321, 6 Sup. Ct. 750, 1176. The insurance companies paid these losses to the assignees of Cely Bros., the persons they insured. They have all the rights Cely Bros. had, or would have had,—no more and no less. It must be borne in mind that we are not discussing the liability of the railroad company as a common carrier. It never, in any sense, had the cotton which was stored in the warehouse in its care, custody, possession, or control. Indeed, the testimony shows that there never was any design to ship it on this railroad. When the president of the company at one time entertained the design of moving it, he provided drays or wagons for this purpose. So, the bare fact of the destruction by fire of this cotton does not involve a responsibility upon the railroad company from which it cannot be freed unless it be shown that the fire was occasioned by the act of God or the public enemy. In the circumstances of this case, negligence on the part of the railroad company must appear, and it cannot be held responsible if no negligence is made to appear. McCready v. Railroad Co., 2 Strob. 359. Indeed, this is the reason and the excuse for the drastic provisions of section 1511, Gen. St. Assuming, therefore, for the purposes of this case, the position taken by complainant,—that while the release binds Cely Bros. from such damages as are included in section 1511, Id., and that public policy would avoid it if it guarded against the results of negligence on the part of the company,—does such negligence appear in this case? A careful examination of the testimony shows that no direct and positive evidence has been adduced explaining, beyond question, the origin of this fire. The coincidence of the passage of the locomotive to and fro alongside of the platform filled with cotton and the outbreak of the fire leads to the conclusion, as an inference, that the fire may —perhaps must—have been started by a spark from the locomotive;

and we may assume that this is the case. But, on the other hand, the testimony shows that every care and precaution was taken by the railroad company to prevent such an occurrence; care and precaution taken but a short time—not many minutes—preceding the disaster. All the proper appliances generally found effective in preventing sparks from flying were actually in use and in good order. If the fire did so originate, it was not from the want of care; that is to say, was not the result of negligence. As we have seen, the railroad company, not occupying the relation of common carrier to this cotton, was not its insurer against all accidents. What was the degree of care it should have exercised is not clearly established in the books. Judge Wallace, on circuit, in an obiter dictum, seems to think that the rule in Danner's Case, 4 Rich. Law, 329, will be applied to all cases of injuries from railroad companies, (Gregory v. Layton, 36 S. C. 94, 15 S. E. 352;) but even then he holds that only the burden of proof is shifted, and that negligence could be disproved. Be this as it may, if, considering the circumstances of this case, and the great danger, from the hot furnace and fire of the locomotive, to cotton on the platform, we hold the company to extreme care,—summa diligentia,—the testimony for the defendant establishes that this was exercised. Nothing from the evidence on the part of the complainant disproves it. Under the rigid rule of Danner's Case, this would exonerate the railroad company. Let an order be taken dismissing the bill, each party paying his own costs; the complainant to pay the costs of the officers of the court; the stenographer's fees to be equally divided among all the parties.

NOTE. Although it has been assumed, for the purposes of this case, that one cannot contract for a release of his own negligence or that of his agents or servants, it must be noted that this rule is not universal. Even a common carrier can insure itself against the negligence of itself, its servants and agents. Phoenix Ins. Co. v. Erie & W. Transp. Co., 117 U. S. 320, 6 Sup. Ct. 750, 1176.