# CHARLESTON.

KEYSTONE MANUFACTURING COMPANY v. WALKER D. HINES, DIRECTOR GENERAL.

Submitted January 14, 1920.   Decided January 27, 1920.

1. RAILROADS—*Contract With Individual Enforceable Unless it Contravenes Public Right or Public Welfare.*

   Unless a contract between a railroad company and a private person clearly contravenes public right or public welfare, it should generally be enforced.   (p. 410).

2. SAME—*Contract Releasing Liability for Fire Not Invalidated by Code.*

   A contract between a railroad company and a private corporation, whereby in consideration of the latter's release of the railroad company of all damages from fire that may be set out by it, the railroad company agrees to build and maintain a private sidetrack over its right of way and adjoining land, for the private use of such corporation, its successors, assigns, etc., is not invalidated by the provisions of section 54 of chapter 62 of the Code, imposing certain duties upon railroad companies in respect to removing dry grass and other inflammable materials from their rights of way, and putting out fires thereon and on adjoining lands.   (p. 410).

3. SAME—*Release of Liability for Fire Binds Lessee of Party Regardless of Notice.*

   And any assignee, lessee or under tenant of such corporation entering the premises and using and operating such private sidetrack does so in subordination to the right of the railroad company under such contract and is bound by the provisions thereof releasing the railroad company from liability for fires set out by it, whether they had actual notice or not.   (p. 411).

4. SAME—*Release of Liability for Fire Applicable to Lumber Stored Along Extension.*

   And though such assignee or sublessee builds an extension to such private sidetrack on land owned or occupied by him, and along which he stores his lumber or other inflammable material, and such extension was built and is operated jointly by him and the railroad company pursuant to the original contract, the owner of such lumber is bound by the provisions of the contract releasing the railroad company from damages for fires set out by it.   (p. 112).

5. SAME—*Contract Releasing Liability for Fire Not Void for Duress.*

> Such a contract between a railroad company and a private corporation entered into freely can not be said to have been done under duress rendering the contract void on that ground, and neither such corporation nor its assigns or sublessee can avoid the contract on the ground of duress in its execution. p. 112).

6. SAME—*Release of Liability for Fires Does Not Cover Gross or Willful and Wanton Negligence.*

> But such a contract between a railroad company and a private corporation will not absolve the railroad company from liability to the other party to the contract, or to its assigns or sub-tenants for gross or willful and wanton negligence in failing to extinguish fires negligently set out by it, when consistently with its other duties to the public in the operation of its trains, it or its trainmen may reasonably be called upon to do so.—(p. 113).

Certified from Circuit Court, Randolph County.

Action by the Keystone Manufacturing Company against Walker D. Hines, Director General. A demurrer to the declaration was overruled. Defendant pleaded the general issue and filed special pleas over objection to which special replications were rejected. On certified questions based on such pleadings and rulings thereon.

> *Affirmed in part. Reversed in part. Certified back.*

*Samuel T. Spears,* for plaintiff.

MILLER, JUDGE:

Plaintiff has impleaded defendant in an action for damages for negligently setting out the fire which it is alleged originated on his right of way and was negligently allowed to be communicated to inflammable matter on the adjoining property occupied by plaintiff and to its lumber and other materials stored there, whereby said lumber and other materials were wholly destroyed and lost to plaintiff, to its damage twenty-five thousand dollars.

In the first count the plaintiff alleges that its said lumber and other property, at the time of its destruction, was situate at what was known as Todd Siding, on and along that portion of defendant's railroad extending from the City of Elkins to the town of Huttonsville, in Randolph County, and along said sid-

ing controlled by plaintiff, a portion of which was then under lease to plaintiff from J. C. McWhorter and E. B. Alkire, which lease also gave plaintiff the option to purchase the property so held under lease, and which said sidetrack plaintiff before said fire and before electing to purchase said leasehold had extended by an addition thereto built at its own expense, with the knowledge and consent of defendant, and along which extension its property so destroyed by fire was at the time situated. And in this count as well as in counts two and three it is averred not only that said fire was so negligently set out in the dry grass, weeds and other combustible material which defendant had negligently allowed to accumulate on its right of way, but that the communication of said fire was the result of the negligence of defendant to use a proper spark arrester on his engine, by reason whereof sparks and coals of fire were suffered to be emitted from the smokestack thereof and to fall upon the inflammable material on and along his said right of way and to set fire to said material thereon and to be communicated as aforesaid to plaintiff's property destroying the same.

The fourth count, in addition to the negligent acts averred in the other counts and the resulting damages to plaintiff's property, further avers that after the fire was so negligently set out by defendant, his agents and servants, and said fire was extending to plaintiff's said property and was about to consume the same by his and their negligent acts as aforesaid, said defendant and his servants who had set out said fire, returning on the same train and seeing said fire and that it was about to destroy plaintiff's property, and that it could easily be put out by them or by the passengers on said train, volunteering and requesting said trainmen to be allowed to do so, refused to stop said train and refused and neglected to put out said fire or allow the passengers aforesaid to do so, and so negligently allowed plaintiff's property to be wholly destroyed and plaintiff damaged as aforesaid in the sum of twenty-five thousand dollars.

Defendant's demurrer to said four counts and each of them was overruled. Whereupon defendant pleaded the general issue, and over objection of plaintiff was allowed to file two special pleas, as applicable to and constituting a defense to each of the causes of action pleaded and to each of said several counts, and

wherein it is averred that the sidetrack and the alleged extension thereof made by plaintiff was built and operated by plaintiff and defendant under and pursuant to a contract entered into September 1, 1913, between the Western Maryland Railway Company, defendant's predecessor in title, and the Limestone Railroad Company, the predecessor in title of J. C. McWhorter and E. B. Alkire, the immediate lessors of plaintiff, and wherein, in the second of said special pleas, the defendant traces the title of the said plaintiff from the said Limestone Railroad Company through one U. G. Young, trustee, to whom the said property was conveyed by said Limestone Railroad Company, and the said McWhorter and Alkire purchasers at the trustee's sale thereof; and it is averred in each of said special pleas that in the said contract between the said railroad companies, which was then and at the time of said fire still in force, it was expressly stated and provided as follows: "And said second party" (meaning said The Limestone Railroad Company) "hereby releases said first party" (meaning said The Western Maryland Railway Company) "from all claims of whatsoever character from damages resulting to the property of said second party" (meaning said The Limestone Railroad Company) "by reason of fire originating from the engines and locomotives of the first party" (meaning said The Western Maryland Railway Company) "and resulting in the burning or destruction of or injury to the property of the second party" (meaning said The Limestone Railroad Company); and covenants that it" (meaning said The Limestone Railroad Company) "will not assert any claims of such character against first party" (meaning said The Western Maryland Railway Company." And it is also averred that the said contract also provides: "And the said contract shall be binding upon the successors, heirs, executors, administrators and assigns of the respective parties hereto." And it is further averred that by force of these provisions of said contract defendant as successors in right and title to the Western Maryland Railway Company has been and is wholly relieved and discharged of all demands set up in said several counts of the declaration, of all which plaintiff had notice by the deeds of record aforesaid under which it claims right and title as lessee or otherwise.

To these special pleas of defendant plaintiff tendered two special replications, which, upon objection thereto, were rejected by the court. The first of said replications denies notice of the contract and the special provisions thereof pleaded by defendant, avers that plaintiff's lumber was not stored along the original sidetrack built by defendant pursuant to said contract, but on and along the extension thereof which was built by plaintiff pursuant to no contract with defendant, the original siding being then controlled by plaintiff under a contract of lease, which property was subsequently to the fire conveyed to plaintiff by its said lessors, and that defendant had accepted freight from plaintiff off the siding so built by it.

By the second of said replications the plaintiff averred that the Limestone Railroad Company which had owned and operated said sidetrack under said original contract had been compelled by duress to enter into said contract and that the same was not binding on it, nor upon plaintiff.

On these pleadings and the rulings of the court thereon the circuit court has certified to us the following questions:

"1. Does the waiver against negligence set up by defendants special pleas operate as a bar to plaintiff's claim for damages, even though plaintiff was not a party to the original contract containing said waiver and had no actual notice thereof?

"2. Is the plaintiff bound by the waiver set up by defendant's special pleas if as a matter of fact the property destroyed by fire was located along that part of the sidetrack which was constructed by plaintiff while it was operating, under lease only, that part of the sidetrack which was constructed under tne original contract between the Western Maryland Railway Company and Limestone Railroad Company?

"3. Can the plaintiff (not being a party to the original contract) interpose the defense of duress to defendant's plea touching said waiver, and do the averments of plaintiff's special replications as to said waiver constitute in law, duress?

"4. Is the waiver set up in defendant's special pleas such as would relieve him from gross negligence, and do the facts set up by plaintiff in the fourth count of his declaration amount in law to gross negligence?"

The primary and fundamental inquiry involved in all four

of the questions submitted is, can a railroad company by contracts like the one pleaded in the present case absolve itself from its common-law or statutory duties and liabilities and from damages resulting to others from its negligence pertaining thereto?

The right of private contract is one of the highest importance, for nothing contributes more to the general welfare or to the libeties of the people than freedom of contract, and unless a contract clearly contravencs public right or public welfare it should generally be enforced. *Baltimore & Ohio Southwestern Railroad Company* v. *Voight,* 176 U. S. 498, 505. In the present case it is strenuously urged that the contract pleaded is void, (1) upon grounds of public policy, (2) as an attempt by the railroad company to avoid liability and obligation imposed upon it by section 54 of chapter 62 of the Code. But the contract relates to no duty or obligation of the railroad company as a public carrier towards the other party to the contract. The sole subject of the contract is a private siding in the country to accommodate the private business of the lessee company, whereby the burdens and liabilities of the railroad company but for the contract would be generally increased. In such contracts the public in general, as a general rule, is in no wise concerned. *Hartford Fire Ins. Co.* v. *Chicago M. & St. P. Ry. Co.,* 175 U. S. 91, affirming the Circuit Court of Appeals, Sanborn, J., 70 Fed. Rep. 201, 30 L. R. A. 193; *Baltimore & Ohio Southwestern Railroad Company* v. *Voight, supra; J. Quirk Milling Co.* v. *Minn. & St. L. R. R. Co.,* (Minn.), 116 Am. St. Rep. 336; 3 Elliott on Railroads, (2nd ed.), p. 535, §1236, and cases cited in notes, 33 Cyc. 1330. In harmony with these authorities we find our own cases of *West Virginia Pulp & Paper Co.* v. *Baltimore & Ohio Railroad Co.,* 75 W. Va. 549; and *Wilson Bros.* v. *Bush, Receiver,* 70 W. Va. 26.

Our next inquiry is, does the provision of the contract exempting the lessor from liability to the lessee, its successors, etc., in any way relieve defendant from the burden and duties imposed by said section 54 of chapter 62 of the Code, so as to invalidate the contract on that ground? The first paragraph of this section of the Code, corrected by reference to the original act as to a slight error in punctuation, is: "Every railroad company shall, on such part of its road as passes through forest

lands or lands subject to fire from any cause, cut and remove from its right of way along such lands, at least twice a year, all grass, brush and other inflammable materials, and employ in seasons of drought and before vegetation has revived in the spring, sufficient trackmen to promptly put out fires on its right of way; and every person, firm or corporation operating any locomotive steam engine in this state shall provide the same with netting of steel or iron wire so constructed, and at all such times maintained as to prevent the escape of fire and sparks from the smoke stacks thereof, and with adequate devices to prevent the escape of fire from ash pans and furnaces which shall be used on such locomotives." And a subsequent provision of this section imposes a penalty on the railways for any violation of the provisions thereof. The contract involved here does not undertake to absolve the railway company from its duties and liabilities to the State or public in general arising out of this statute. Regardless of the contract it remained liable to others and subject to indictment and punishment for any failure on its part to obey the law; the general public was in no way concerned with the contract between the railway companies relied on by defendant. The same principles should obtain in its enforcement as in the case of any other contract. This is the law of the authorities cited.

The contract then infringing no rule of public policy or positive law, the next question involved is, does it bind plaintiff as lessee in possession without notice thereof? The special pleas aver notice to plaintiff, and impute to it notice by recorded title from the railway company to plaintiff's immediate lessors, McWhorter and Alkire. As a general rule a mere sub-tenant is not liable to the lessor for the covenants of the lessee in a lease. Without accepting the sub-tenant the lessor can not as a general rule enforce against him the covenants of his immediate lessee; this because of want of privity of contract between lessor and sub-tenant, and because there is generally a reversionary right in the lessor of such sub-tenant. 1 Taylor on Landlord and Tenant, (9th ed.), p. 130, §109. There is a wide distinction between such sub-tenant and an assignee of the original lease. Wood on Landlord and Tenant, p. 132, §94; *Goldman* v. *Daniel Feder & Co.,* 84 W. Va.——; 100 S. E. 400. And this rule respect-

ing the rights of a sub-tenant was recognized and applied in the case of *Wooldridge & Son* v. *Ft. W. & D. C. Ry. Co.*, 38 Tex. Civ. App. 551, which involved a contract somewhat similar to the one pleaded and relied on in this case, and where it was held that the railroad company was not thereby discharged from the claim of a sub-tenant. The pleadings in this case do not show the term of lease under which plaintiff occupied the premises. If the rule invoked was properly applied in the Texas case, which we do not decide, there is enough difference between the facts in that case and those alleged in the pleadings in this case to differentiate the one from the other. The contract here by its terms was to apply and bind the lessee, its successors, assigns etc. The railway company was protected in its contract against liabilities about to be imposed by the new conditions about to be created under the contract, and we think that anyone entering and using the side track and adjoining premises as plaintiff is alleged to have entered, was bound to take notice of the existing conditions and of the right by which its lessor or predecessor was occupying the railway company's right of way, to say nothing of the recorded title of its immediate lessors, and that its occupancy must be regarded as being subordinated to the rights of the railway company under the contract. The special pleas aver that the extension of the sidetrack by plaintiff and the subsequent use and operation by it of said siding thus extended was under the terms and provisions of the original lease contract. The rule of our decisions, regarded as elementary, is that when the relation of landlord and tenant has been once established, it attaches to all who may succeed to the possession through or under the tenant, whether immediately or mediately, and the succeeding tenant is as much bound by the acts and admissions of his predecessors as if they were his own. *Emerick* v. *Tavener,* 9 Grat. 220, 224; *Allen* v. *Bartlett,* 20 W. Va. 46; *Ryman* v. *Neff,* 100 Va. 521, 524. Such, it seems to us, ought to be the rule applicable to the facts in this case. If not, how could a railroad company protect itself? If by subletting, the other party to the contract could at once turn over the premises to some third party, as a mere sub-tenant he might thereby obtain all the benefits without incurring the burdens of his contract.

The next question is, does the waiver or release of damages

in the contract apply to the extension of the sidetrack and to the lumber and other material stored along such extension? The special pleas aver that said extension was made and the same operated under and by virtue of the said original contract with the Limestone Railroad Company. If so, the contract would apply to that extension and to the lumber stored along the same.

In response to the third question certified, on the subject of duress, we do not think this question material. It can not be said that the original lessee was under any duress in executing the contract. The lessee was not bound to enter into the contract, nor was the lessor in any way bound to confer on the lessee the rights thereby acquired. It was freely entered into. It involved no contract of carriage or release of liability thereunder. The right of the railroad company to enter into such a contract, according to the authorities already cited, is a complete answer to the plea of duress. Of course, if there was no duress affecting the rights of the original lessee, the plaintiff can not plead duress in avoidance of the contract.

The fourth question submitted involves a proposition of more serious import. The special pleas filed are general and to all four counts. As to the first, second and third counts they may be said to present a complete defense to the several causes of action pleaded. But in addition to the facts pleaded in the first three counts, the fourth count pleads facts which we think amount to gross, or willful and wanton negligence. To a contract against such negligence the law seems to impose a bar. *Greenwich Ins. Co. v. L. & N. R. R. Co.,* (Ky.), 56 L. R. A. 477. Can there be any question about the degree of negligence pleaded in the fourth count? The last paragraph of section 54 of chapter 62 of the Code provides that: "In case of fire on its own or neighboring lands, the railroad company shall use all practicable means to put it out." And this statute makes it the duty of engineers, conductors, or trainmen discovering or knowing of fires in fences or other material along or near the right of way of the railroad in such lands to report the same to the first station agent, and he is required to notify the nearest fire warden and use all means to extinguish the fire. Neglect of these duties is made criminal and punishable as a misdemeanor. The duty thereby imposed is of greater magnitude than the duty to remove the grass and other

inflammable materials, imposed by the first paragraph of said section. Neglect of that duty if it may be provided against by contract as in this case, may result in no damage to anyone, but neglect of the duty pertaining to fires actually set out and threatening injury to property is condemned by the principles of humanity and justice independently of the positive provisions of the statute. Wood on Railroads, (Minor's Ed.), §327. There is some conflict among the decisions as to the proper import of the expressions "Willful Negligence" and "Wanton Negligence", but the expression "Willful and Wanton Negligence" has found its way into many decisions. 4 Words and Phrases, (2nd ser.), pp. 1316, 1317. And as employed in cases of this character they do not necessarily include the element of malice and actual intent to injure another, but impute to the wrongdoer a reckless disregard of the safety of the person or property of another, by failing, after discovering the peril, to prevent the injury. *Havel* v. *Minn. & St. L. R. R. Co.*, 120 Minn. 195; *Anderson* v. *Minn. St. P. & S. S. M. Railway Company*, 103 Minn. 224, and cases cited; *Lake Shore & M. S. Ry. Co.* v. *Bodemer*, 139 Ill. 596, 32 Am. St. Rep. 218. We think these definitions define and characterize the kind of negligence averred in said fourth count. In the case of *Pittsburgh, C. C. & St. L. Ry. Co.* v. *Brough*, (Ind.), 12 L. R. A. (N. S.), 401, apparently all the cases on this particular question are referred to and reviewed. See also *Ginter* v. *Pennsylvania Railroad Co.*, 3 A. L. R. 505, and note. In his special plea defendant offered nothing except the contract to absolve him from the gross negligence imputed to him and his agents and servants in charge of the train. The principal case just cited and those cited and reviewed therein hold that as a general rule the primary duty of a train crew is to their train and passengers. But there is a concessum in some, if not all of them, that where this primary duty may be discharged as well as the subordinate duty imposed, the latter duty also should not be neglected. The facts pleaded, we think, show that without neglect of this primary duty the train could have been stopped, and if the members of the crew could not have done so, their duty was to allow the passengers who volunteered their services to alight and extinguish the fire. No rule of universal application can be formulated. It depends on the char-

acter of the train being operated and the circumstances attending each case.   Our conclusion is that the waiver pleaded in defendant's special pleas does not present a complete defense to the cause of action set forth in said fourth count.

So far as consistent herewith we affirm the judgment and rulings of the court below, but in so far as its judgment may be found inconsistent with our conclusions herein expressed we reverse the same, and our decision on the question propounded will be certified back to the court below, as provided by the statute.

*Affirmed in part.   Reversed in part.   Certified back.*