## ÆTNA INS. CO. et al. v. ATLANTIC COAST LINE R. CO. *

### No. 3891.

Circuit Court of Appeals, Fourth Circuit.

Oct. 8, 1935.

J. Gordon Bohannan, of Petersburg, Va., and Alexander H. Sands, of Richmond, Va. (Alexander H. Sands, Jr., of

*Writ of certiorari denied 56 S. Ct. 442, 80 L. Ed. ——, ——.

Richmond, Va., on the brief), for appellants.

Thomas W. Davis, of Wilmington, N. C., and J. M. Townsend, of Petersburg, Va. (C. S. Valentine, of Richmond, Va., on the brief), for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

NORTHCOTT, Circuit Judge.

This is an appeal from a decree entered in the District Court of the United States for the Eastern District of Virginia, in December, 1934, in favor of the appellee, hereinafter referred to as the "Railroad." The action was originally brought at law by eight of the appellants, insurance carriers, suing for the benefit of themselves as assignees of the American Hardware Company, and for the benefit of such other insurance companies as were similarly situated, and who might be allowed to intervene and to be made parties plaintiff to the action. While the matter was pending, on the common-law side of the court, the Railroad filed a demurrer to the declaration and also filed several pleas including the general issue. Several other insurance carriers intervened and were made parties plaintiff. Upon the motion of the plaintiffs, unopposed by the Railroad, the case was transferred to the equity side of the court and pleadings were changed or adopted to conform to equity practice. Other parties intervened and were made plaintiffs, and the defendant filed its answer to the original and subsequent pleadings. An agreed stipulation of facts was filed, and the suit was heard upon the pleadings and the facts as stipulated.

In the year 1917 one Plummer, who owned a tract of land in Chesterfield county, Va., about one and one-half miles from the city of Petersburg, applied to the Railroad for the construction of a spur track for the purpose of serving a plant to be erected on said land by the Independent Trunk & Bag Company, which company was to be incorporated. The spur track was built after the execution of what is termed a "Spur Track Agreement" entered into between the Railroad and the Trunk Company in November, 1917, and recorded in the clerk's office of the circuit court of Chesterfield county, the same month. The spur track was built by the Trunk Company, which furnished all materials used except the metal, which was furnished by the Railroad Company. The spur track branched off from the main line of the Railroad and ran into and terminated upon the Trunk Company's land. It was a private siding, and the public had no rights or interest therein, and it was used only by the said Trunk Company and its successor in title, said American Hardware Company, Incorporated.

The American Hardware Company succeeded to the property of the Trunk Company, by merger, in the year 1929, and continued to make use of the spur track under the terms and conditions of the agreement with the Railroad Company. On August 28, 1932, the plant and property of the hardware company were destroyed by a fire, which fire originated from coals or sparks ejected from a locomotive of the Railroad being operated on the main line of said Railroad. The carrier insurance companies, as a result of this loss and pursuant to liability under their policies, paid the hardware company the sum of $195,044.38 and brought this suit to recover said amount from the Railroad on the theory that they were subrogated to the rights of the hardware company against the Railroad.

The spur track agreement above referred to contained the following provisions pertaining to losses by fire: "The party of the second part recognizes that the presence of the said side or spur track and the location of the property of the party of the second part increase the danger of loss by fire originating through the operation of the railroad, and as a further consideration for the location of the said side or spur track it is mutually understood and agreed that the Railroad Company shall be released and discharged and saved harmless from any and all liability for damage to property owned by or in possession of the party of the second part in the vicinity of the said side or spur track by fire communicated by the engines of the Railroad Company while upon the said side or spur track or originating within the limits of the right of way of such side or spur track, or by its engines while upon the main track of the Railroad Company or originating within the limits of the right of way of such main track in the vicinity of the said side or spur track, whether due to negligence or otherwise, and the party of the second part will save

and hold the Railroad Company harmless from and against any and all liability for damages that may be sustained by third parties to property that may be attracted to said side or spur track by reason of the use of same by the party of the second part, by fire originating as aforesaid."

The companies that carried the fire insurance, plaintiffs below, had actual notice of the release from liability in the case of loss by fire, as well as constructive notice through the recordation of the spur track agreement, and their policies of insurance upon the plant and property of the hardware company contained the following provision: "Notice is hereby accepted that the assured have waived the right to recovery from the Atlantic Coast Line Railroad Company and Seaboard Air Line Railroad Company, any damage by fire occurring to the property described herein or affected thereby."

The questions involved in this appeal are: (1) Whether the spur track agreement, entered into between the Railroad and the owner of the property, was a valid one. (2) If valid, did the agreement protect the Railroad from liability for loss by fire occasioned by their engines while being operated on the main track of the railroad and not upon the spur track?

The agreement in question was entered into voluntarily by the Railroad at a time when it was under no direct legal obligation to construct the spur track. It was obvious that the construction of the spur track would result in the building of a number of buildings that would be exposed to destruction by fire caused by sparks from the Railroad engines. The Railroad had the right to protect itself from this added hazard, to be occasioned by the construction of the spur track, by a contract, unless such contract was unlawful per se or made unlawful by statute. There was nothing inherently vicious in the contract of exemption from liability, and it did not involve exemption to personal injury but only to property. The public has an interest in the life and safety of human beings, and contracts with respect to personal injuries are governed by a different rule from that governing contracts with regard to injury to property. Griswold v. Illinois Central Ry. Co., 90 Iowa, 265, 57 N. W. 843, 24 L. R. A. 647. At the time of the making of the spur track agreement the parties were free to make their own bargain as to its construction, and "the highest public policy is found in the enforcement of the contract which was actually made." Santa Fé, P. & P. R. Co. v. Grant Bros. Const. Co., 228 U. S. 177, 33 S. Ct. 474, 478, 57 L. Ed. 787. The general rule on this point is concisely stated in 51 Corpus Juris, p. 1185: "A railroad company may, when acting in its private capacity, relieve itself from an absolute liability imposed by statute for setting fire to property as well as from liability resulting from negligence * * *."

The federal courts and a majority of the state courts hold that contracts, in consideration of some privilege or concession granted by a railroad company which it would not otherwise be bound to extend, exempting it from liability for the destruction of buildings, are valid and enforceable.* The contract may validly release from a liability imposed by stat-

* For opinions discussing this question see the following cases: Savannah F. & M. Ins. Co. v. Pelzer Mfg. Co. (C. C.) 60 F. 39; Sunlight Carbon Co. v. St. Louis & S. F. R. Co. (C. C. A.) 15 F.(2d) 802; McKinney v. Mobile & Ohio R. Co., 215 Ala. 101, 109 So. 752. 48 A. L. R. 998; King v. Southern Pac. Co., 109 Cal. 96, 41 P. 786, 29 L. R. A. 755; Davis v. Gossett & Sons, 30 Ga. App. 576, 118 S. E. 773, affirmed in 158 Ga. 886, 124 S. E. 529; Bartee Tie Co. v. Jackson, 281 Ill. 452, 117 N. E. 1007; Niederhaus v. Jackson, 79 Ind. App. 551, 137 N. E. 623; Thirlwell v. Hines, 108 Kan. 700, 196 P. 1068; Adamstown Canning & Supply Co. v. Baltimore & O. R. Co., 137 Md. 199, 112 A. 286; Porter v. New York, N. H. & H. R. Co., 205 Mass. 590, 91 N. E. 875; New York Cent. R. Co. v. Wm. Culkeen & Sons Co., 249 Mass. 71, 144 N. E. 96; Mann v. Pere Marquette R. Co., 135 Mich. 210, 97 N. W. 721; Millers' Nat. Ins. Co. v. Minneapolis, St. P. & S. Ste. M. R. Co., 132 Minn. 151, 156 N. W. 117; Rundell & Co. v. Lehigh Valley R. Co., 254 Pa. 529, 98 A. 1054; Richmond v. New York, N. H. & H. R. Co., 26 R. I. 225, 58 A. 767; Mayfield v. Southern Ry., 85 S. C. 165, 67 S. E. 132; Batesburg Cotton Oil Co. v. Southern R. Co., 103 S. C. 494, 88 S. E. 360; Williams v. Hines, 128 S. C. 102, 121 S. E. 600; Carolina, C. & O. R. Co. v. Unaka Springs Lumber Co., 130 Tenn. 354, 170 S. W. 591; Missouri, K. & T. R. Co. v. Carter, 95 Tex. 461, 68 S. W. 159; Talley v. Gulf, C. & S. F. R. Co. (Tex. Civ. App.) 176 S. W. 65; Keystone Mfg. Co. v. Hines, 85 W. Va. 405, 102 S. E. 106.

ute. Sunlight Carbon Co. v. St. Louis & S. F. R. Co. (C. C. A.) 15 F.(2d) 802.

It is contended on behalf of the appellants that this general rule is not the Virginia rule and that the federal courts are compelled to follow the rule in Virginia. We first come to consider the Virginia rule. What is known as the Featherston Act (section 3992, Code Virginia) provides for recovery against a railroad upon proof that property has been destroyed as a consequence of sparks or coals emitted from engines of a railroad company, and it is admitted that under the decisions of the Virginia courts all questions of negligence are eliminated in suits to recover for such destruction of property. Virginian Ry. Co. v. London, 148 Va. 699, 139 S. E. 328.

Attorneys for the appellants rely mainly upon the case of Johnson's Adm'x v. Richmond & D. R. Co., 86 Va. 975, 11 S. E. 829, 830, decided in 1890, which was an action for the death of Johnson, who was killed by one of the railroad's trains, in which the Virginia court held: "And the principle which invalidates a stipulation for exemption from liability for one's own negligence is not confined to the contracts of carriers as such. It applies universally."

The Johnson Case was reviewed by the Supreme Court of the United States in the case of Hartford Fire Insurance Co. v. Chicago, M. & St. P. Ry. Co., 175 U. S. 91, 20 S. Ct. 33, 44 L. Ed. 84; here Mr. Justice Gray stated that this decision of the Virginia court, in making the rule it was applying to a death by injury case apply universally, was an obiter dictum and that it was "certainly too sweeping." The Johnson Case has been considered in decisions of other state courts, and the doctrine therein laid down repudiated. Griswold v. Illinois Cent. Ry. Co., supra; Borderland Coal Co. v. Norfolk & W. Ry. Co., 87 W. Va. 339, 104 S. E. 624; Missouri, K. & T. R. Co. v. Carter, 95 Tex. 461, 68 S. W. 159.

At the time of the decision in the Johnson Case, the applicable statute in effect in Virginia read as follows: "No agreement made by a common carrier for exemption from liability for injury or loss occasioned by his own neglect or mis-

conduct, shall be valid." Code 1887, § 1296.

After the decision in the Johnson Case and in the year 1904, this section of the Code was repealed and a new section enacted which reads as follows: "No agreement made by a transportation company for exemption from liability for injury or loss occasioned by its own neglect or misconduct as a common carrier shall be valid." Code Virginia, § 3930.

Since the enactment of the statute in 1904 we can find no opinion of the highest court of Virginia directly bearing upon this question. It cannot be doubted that the Virginia Legislature considered the decision in the Johnson Case when it reenacted this statute, and even though the contract of exemption, here considered, may have been, under the decision in the Johnson Case, prohibited by the statute as it then was, we are of the opinion that it did not come within the inhibition of the statute of 1904. To ignore the change from "any agreement made by a common carrier" to "any agreement made by a transportation company as a common carrier" would be to disregard entirely the evident intent of the Legislature, and the plain meaning of the words used. While the contract in question was made by the Railroad in the furtherance of its business as a carrier, it was not a contract made for the carriage of passengers or property. E. L. Cleveland Co. v. Bangor & A. R. Co., 133 Me. 62, 173 A. 813, 814.

It is further contended on behalf of the appellee that no question of negligence, as to the origin of the fire, is involved. The question here presented is discussed in the case of E. L. Cleveland Co. v. Bangor & A. R. Co., supra; where the court said: "It should now be noted, however, that the fire in this case is not shown by the agreed statement to have been of negligent origin. We cannot assume any negligence upon the part of the defendant. If not negligent, the cause of the fire was accidental. We cannot conceive of any reason why a contract cannot legally include such a provision as to fire accidentally communicated."

On the other hand, it has been held that, when it had been proven that the fire was caused by sparks emitted by engines of a railroad, negligence is pre-

sumed. White v. New York, etc., R. Co., 99 Va. 357, 38 S. E. 180.

It was early laid down by the Virginia court that "courts are very averse to holding contracts illegal upon grounds of public policy, unless the question is free from all doubt." Brown v. Speyers, 61 Va. (20 Grat.) 296.

We are of the opinion that the contract here in question is not void as against public policy under the Virginia rule.

It is contended that the question of the validity of the contract was not urged in the court below and for that reason should not be considered here. Æro Mayflower Transit Co. v. Georgia Public Service Commission, 295 U. S. 285, 55 S. Ct. 709, 79 L. Ed. ——, decided by the Supreme Court of the United States April 29, 1935, and authorities there cited. The opinion of the judge below does not seem to have dealt with this point, and this lends color to the contention that it was not urged below, although assignment of error number two seems to have raised the point in a rather vague and indefinite way. In view, however, of our conclusion as above stated, it is not necessary to decide this question.

As to the second question, whether the agreement covered a loss occasioned by engines while being operated upon the main track and not upon the spur track, there is no room for other than one construction of the contract. Courts are only called upon to exercise their judgment as to the construction of a contract when they find themselves within the realm of ambiguity; here there is no such realm, the contract plainly says "or by its engines while upon the main track of the Railroad Company"; the words are clear and concise and can have only one meaning. As was strongly stated by Judge Parker in the case of Southern Ry. Co. v. Stearns Bros. (C. C. A.) 28 F.(2d) 560, if the intention had been to confine the exemption to damage caused by engines while on the spur track there would have been no occasion to use the words that were used. It was reasonable and natural that the railroad company should require this clause to be inserted. The construction of the spur track brought about the erection of inflammable buildings and the storage of property in close proximity not only to the spur track, but to the main track as well, and the railroad would naturally endeavor to protect itself from possible damage. The contract clearly covered loss occasioned by fire from sparks emitted from engines upon the main track of the railroad.

The equities of the case are certainly not with the appellants, and their claim is not one that would appeal to the conscience of a chancellor. They insured the property that was destroyed by the fire with the full knowledge of the contract of exemption originally made with the railroad company when it agreed to construct the spur track. They incorporated in the policies they issued an acceptance of a notice that the assured had waived the right to recover for any damage by fire caused by the railroad; they entered into an insurance contract with their eyes open and, unless they can show clearly and beyond a doubt that the contract of exemption was an invalid one, they ought not to recover. In our opinion the contract made with regard to the construction of the spur track was valid, and the decree of the court below is accordingly affirmed.

Affirmed.