Peter V. King et al., Appellants, *v.* Domingo Sarria, impleaded, etc., Respondent.

Where the essentials of a contract made in a foreign state under and in pursuance of its laws are not hostile to the law and policy of this State, the contract may be relied upon and availed of in the courts of this State.

Defendant S., a resident of Cuba, was a special partner of a firm organized and doing business in said island. All of the provisions of the Spanish law in reference to the formation and the carrying on of the business of limited partnerships were complied with so far as under said law to limit the liability of the special partner to the amount of funds which he had contributed in accordance with the partnership agreement. The firm became indebted to plaintiffs for advances. S. had no personal connection with the transactions. In an action to recover such indebtedness, *held,* that the contract of partnership was to be construed and governed by the laws of Spain; that the liability of S., and the extent of the authority of the acting partners to bind him were to be determined thereby; and that therefore S. was entitled to set up his limited liability as a special partner as a defense.

The power of one partner to act as agent for and to bind his co-partners discussed, and the authorities upon the subject collated.

Also the authorities upon the subject of the law of domicile and when it controls in the courts of another State, collated.

(Argued February 6, 1877 ; decided March 20, 1877.)

Appeal from judgment of the General Term of the

Supreme Court in the first judicial department affirming a judgment in favor of defendant Sarria, entered upon the report of a referee. (Reported below, 7 Hun, 167.)

This action was brought against defendants as members of the firm of Grau, Lopez & Co., of Cienfuegos, Cuba, to recover a balance alleged to be due from said firm to plaintiffs' firm for advances made.

The defendant Sarria alone appeared and answered, setting up that he was a limited partner, or *comanditario*, and therefore not liable.

The referee found the indebtedness alleged in the complaint, and the following facts among others :

That defendants in October, 1866, entered into a contract of partnership by which defendant Sarria became a special partner, he contributing $110,000 in cash and effects, and to have a specified share of the profits. That said agreement was reduced to the form of what is known in the Spanish law as an "*Escritura Publica*," or public instrument, and was made with reference to, and in pursuance of, the laws of Spain, regulating such matters. That, by the law of Spain, it is provided that such agreements shall be registered in the office of the secretary of the *intendencia* of the province in which the same are executed, which registry may be effected by filing a certified extract, made by the notary, before whom the contract was signed, containing the elements prescribed by article 290 of the Code of Commerce of Spain. That said agreement was not so registered. That, by the law of Spain, the omission so to register the said agreement, or *escritura*, did not have the effect of making the said defendant, Sarria, liable as a general partner. That, by the law of Spain, a *comanditario*, or limited partner, is entitled to participate in the profits of the concern or firm to which he has contributed money or property, but cannot be made liable for the debts thereof, beyond his principal so contributed, unless he should violate the law of Spain, by using or allowing the use of his individual name in the firm style or name. That defendant, Sarria, never had

any partnership connection with the defendants Grau and Lopez, other than that of *comanditario*. That he did not use, nor permit his name to be used, in the firm style or name, nor by any representation, act or omission render himself liable as a general partner. That the capital called for by said agreement, general as well as special, was duly contributed by the partners respectively. That no part of this capital was ever withdrawn by the defendant, Sarria. That the defendants Grau and Lopez took exclusive charge of said firm, and of its management and administration, and of the business carried on by it. That the defendant, Sarria, never took part in, nor in any way interfered with, the management or administration of said firm, nor of its business; nor has he, at any time, by representations, acts, or otherwise, held himself out as a general partner of said firm.

As conclusions of law, the referee found that the liability of the defendant, Sarria, was to be determined by the law of Spain, and not by the law of the State of New York; and that he was entitled to judgment dismissing the complaint.

Judgment was entered accordingly. Further facts appear in the opinion.

*S. P. Nash* for the appellants. The respondent being confessedly a partner of the firm of Grau, Lopez & Co., and sharing as such in the profits of its business, was liable, unless exempted from such liability by the law of Spain. (*Leggett* v. *Hyde*, 58 N. Y., 272; *Van Ingen* v. *Whitman*, 62 id., 513.) The liabilities of the members of said firm are to be treated as if the partnership was governed by the laws of New York. (Story's Confl. of Laws, § 283; *Coolidge* v. *Poor*, 15 Mass., 427; *Boyle* v. *Zachaire*, 6 Pet., 635; *Milne* v. *Moreton*, 6 Binn., 353, 359; *Curtis* v. *Leavitt*, 15 N. Y., 9, 227; *Consequa* v. *Fanning*, 17 J. R., 511.) The respondent's claim that he was exempted from liability by a private arrangement between himself and his partners, limiting his liability, is not tenable. (*Baird's Case*, L. R., 5 Ch. App., 725, 733; *Greenwood's Case*, 3 De G. M. & G., 459, 476;

*Ontario Bk.* v. *Hennessey*, 48 N. Y., 545; *Leggett* v. *Hyde*, 58 id., 272; *N. Y. & N. H. R. R. Co.* v. *Schuyler*, 34 N. Y., 30, 65, 73; *Edmunds* v. *Bushell*, L. R., 1 Q. B., 97; *Cox* v. *Hickman*, 8 H. of L. Cas., 268.)    All partnerships are *prima facie* general.    (Lindl. on Part., 302; *Walden* v. *Sherburne*, 15 J. R., 409; 3 De G. M. & G., 476; 4 Pard. Droit Comm., 170, No. 1028.)    The exemption claimed by respondent being contrary to the policy of our law should fail.    (1 R. S., 764; 2 R. S. [Banks, 6th ed.], 1153; Pardessus, Art., 1032; *Am. Lin. Thread Co.* v. *Wortendyke*, 24 N. Y., 550; *Dike* v. *Erie R. Co.*, 45 id., 113; *Kelly* v. *Crapo*, id., 86; *Milnor* v. *N. Y. & N. H. R. R. Co.*, 53 id., 363; Story on Confl. of Laws, §§ 414–416, 513.)

*F. R. Coudert* and *A. P. Whitehead* for the respondent. In the absence of any finding or request to find upon the subject of plaintiff's knowledge of the relation the respondent sustained to the firm of Grau, Lopez & Co., it must be presumed they knew he was a limited partner.    (*Carman* v. *Tully*, 21 N. Y., 547; *Grant* v. *Morse*, 22 id., 323; *Valentine* v. *Conner*, 40 id., 248; *Phelps* v. *McDonald*, 26 id., 82; *Smith* v. *Coe*, 29 id., 666; *Brainard* v. *Dunning*, 30 id., 211; *Van Slyke* v. *Hyatt*, 46 id., 265; *Smith* v. *Coe*, 29 id., 666; *Barnes* v. *Perrine*, 12 id., 18; *Hill* v. *Grant*, 46 id., 496; *Fullerton* v. *McCurdy*, 55 id., 637.)    The respondent's position must be determined by the Spanish law.    (Story's Confl. of Laws [7th ed.], § 320, *a;* Wharton's Confl. of Laws, §§ 468–470; Westlake on Priv. Int'l Law, Art., 211, 220, 222; Lindl. on Part. Suppl., 26, 27; Savigny on Priv. Int'l Law, 190, 191; 5 Felix Droit Int'l [vol. 2], No. 311; *Burrows* v. *Downs*, 9 R. I., 446; 11 Am. R., 283; *Cutler* v. *Thomas*, 25 Vt., 73; *Hastings* v. *Hopkinson*, 28 id., 108; *Hogg* v. *Orgill*, 34 Penn., 344; *Carroll* v. *Waters*, 9 Martin, 500; *Baldwin* v. v. *Gray*, 4 id. [N. S.], 192, 193; *Ferguson* v. *Flower*, id., 312.)

FOLGER, J.    The plaintiffs seek to recover a sum of money from the defendant Sarria, upon contract.    They do not

show that he in person made with them the contract which they allege. It is, indeed, one of the conceded facts in the case, that the contract was made, as matter of fact, by persons other than Sarria. To succeed, then, in their action, they must show that those persons in some way represented Sarria, and had authority to bind him thereto, to the full extent to which the plaintiffs seek to hold him. To show such authority, proof is made that Sarria was a partner with Grau & Lopez, and that the latter two, under the firm name of Grau, Lopez & Co., made the contract. If nothing more appeared in the case, this would suffice for the plaintiffs; for, by virtue of the relation of partnership, one partner becomes the general agent for the other, as to all matters within the scope of the partnership dealings, and has thereby given to him all authority needful for carrying on the partnership, and which is usually exercised by partners in that business; (*Hawken* v. *Bourne*, 8 M. & W., 703.) Indeed, it is as agent that the power of one partner to bind his co-partner is obtained and exercised. The law of partnership is a branch of the law of principal and agent; (*Cox* v. *Hickman*, 8 H. of L. Cas., 268; *Baring* v. *Lyman*, 1 Story, 396; *Worrall* v. *Munn*, 5 N. Y., 229.) In the case first above cited (8 M. & W., *supra*), it is added: that any restriction which by agreement amongst the partners is attempted to be imposed upon the authority which one partner possesses as the general agent of the other, is operative only between the partners themselves, and does not limit the authority as to third persons, who acquire rights by its exercise, unless they know that such restriction has been made. It is manifest, however, that this remark is to be qualified, when taken in connection with any statute law, which has provided for the formation of limited partnerships, where that statute law is operative. A due observance of such statutory provisions limits the liability of the special partner. It limits, too, the authority of the general partner, as the agent of the special partner, and fixes beforehand the extent to which, as agent, he may bind the special partner. It is hardly necessary to

say, that when a limited partnership is duly formed and carried on under our statute, though the general partner is the agent for all the partners, with powers full enough to transact all the business of the firm, and to bind it to all contracts within the scope of that business, he gets no authority, from his relation as partner and agent of the special member of the firm, to fix upon him any greater liability than that which has been stipulated for. These principles are stated here, not as new or forgotten by any one, but as the basis upon which the determination of this case will rest.

It turned out that the partnership of Grau, Lopez & Co. was created by a formal instrument in writing, and that, by its terms, the liability of Sarria was special, and limited in extent to a fixed amount. That instrument, (it is found as fact by the learned referee), and all the doings of the three partners under it, have been in due accord with the commercial code of Spain, of which nation they were citizens, and under whose government and laws they were living and acting when they executed the instrument, and formed and carried on the partnership. And it is proven and found as fact in the case, that when, in due pursuance of the Spanish law, a person has, as did Sarria, entered into such a partnership with others, and has, as did Sarria and his partners, duly observed and carried out the provisions of the law and the terms of their agreement, the liability of the special partner, as was Sarria, is limited to the amount of funds which he has contributed according to his agreement. It is well to observe here, that the learned referee has found that Sarria never had any partnership connection with Grau & Lopez, other than that of a limited partner; that he did not use, nor permit to be used, his name in the firm name; that he did not, by any representation, act or omission, hold himself out, or render himself liable, as a general partner. We have then, Sarria himself making, in person, no contract with the plaintiffs, and giving a special and express authority only, to Grau & Lopez to make one, which authority was in exact pursuance of law. Those who deal with one as agent do so at their peril, if it

turns out that he had no authority from a principal; and where they rely upon his delegated authority as that of a partner, and know that the partnership was created in another country, must they not look to it, to see how far that law, and the partnership under it, give power to the acting partner?   As then, the power of Grau & Lopez to bind Sarria by contract was that of partners, that is, of agents; and as their authority was lawfully restricted, so that they could not bind him in a liability greater than that named in the contract of partnership, it seems to follow that the plaintiffs have no contract which can be enforced against Sarria, otherwise or further, than is provided for by the terms of that authority.   Nor did Grau & Lopez make the contract with the plaintiffs in the name of Sarria, nor with any special claim of right to represent him.   They made it in the name of Grau, Lopez & Co., and claiming only to represent that partnership.   As to Sarria, the un-named partner, they were agents, acting under an authority special, express, limited, and could give to the plaintiffs no more claim upon Sarria than such an authority empowered them.   The plaintiffs were subject, in these dealings with Sarria, to the limitations which he had lawfully put upon the powers of his agents. Again, to state familiar doctrine, no one, in dealing with an agent, may hold the principal to a contract which was not within the authority of the agent to make; nor where there is an express written authority, is it to be enlarged by parol, or added to by implication.   It is to be construed, as to its nature and extent, according to the force of the terms used, and the objects to be accomplished.

But it is claimed by the learned counsel for the plaintiff that the Commercial Code of Spain cannot have an extra-territorial effect; and that one dealing in this State, in which that law does not rule, cannot avail himself of its effect.   If this be so, it must be, because the law of this State forbids a foreigner, in such a case as this, from invoking the aid of any law of his domicile.   But one country recognizes and admits the operation within its own jurisdiction, of the laws

of another, when not contrary to its own public policy, nor to abstract justice, nor pure morals. It does this on the principle of comity. It has been so long practised that it is stated as a principle of private international jurisprudence; that rights which have once well accrued by the law of the appropriate sovereign are treated as valid everywhere. (Westlake on Priv. Int. Law, art. 58.)

The principle, from which originates the influence exercised by the law of a foreign State, in determining the *status* or rights of its subjects in another country, is thus well stated. It is the necessary intercourse of the subjects of independent governments, which gives rise to a sort of compact, that their municipal institutions shall receive a degree of reciprocal efficacy and sanction within their respective dominions. It is not the statutes of one community which extend their controlling power into the territories of another; it is the sovereign of each who adopts the foreign rule, and applies it to those particular cases in which it is found necessary to protect and cherish the mutual intercourse of his subjects, with those of the country whose laws he adopts; (*Per* Sir Saml. Romilly, *arguendo, Shedden* v. *Patrick*, 1 Macqueen's H. of L. Cases, 554.)

It cannot be said that there is a rule of exclusion, on account of this particular law being contrary to our public policy. It much resembles our own statute for the formation of limited partnerships, and, with some difference in detail, it aims at the same beneficial result, which ours has in view; nor may we say, with our statute before us, that the law is opposed to good morals or abstract justice. There cannot be that exclusion, because it is a rule of our law not to give, in any case, to a foreigner the benefit of the law of his domicile.

Mr. Nash was correct, in opening his argument, in saying that this is a case of first impression in this State. Hence it is, that in looking for the reasons upon which it is to be decided, we have to be governed by the analogies of the law, rather than cases in point. Let us see where those

analogies tend.   If one marry, where marriage is only a civil contract, his marital relation will be held valid, in a country where a religious ceremony is, by its law, deemed vital. The same principle prevails with us, though not called into application by such a state of facts.   It is an established principle that the law of the place where contracts purely personal are made, must govern as to their construction and validity, unless they are made to be performed in another State or country; (*Curtis* v. *Leavitt*, 15 N. Y., 227; *Chapman* v. *Robertson*, 6 Paige, 627.)   This contract of partnership was made to be performed in Cuba.   The contract made by the partnership with the plaintiffs, it may be conceded, was made in New York, to be performed here.   The contract with the plaintiffs will be construed and enforced by the laws of this State, and they will determine the nature and extent of the liability upon it, of the partnership, the maker of it.   The former, the contract of partnership, between the members of the firm, will be construed and weighed by the laws of Spain, and they will determine the liability of Sarria, and the extent of the authority given by him to Grau and Lopez.   In *Comm. of Ky.* v. *Bassford* (6 Hill, 526), the Supreme Court of this State maintained an action on a bond, given to secure the payment of money, to be raised and distributed by a lottery, on the ground that it was a valid and legal obligation in Kentucky, where it was assumed that it was made, and where it was to be executed, though opposed to the statutory policy of this State.   And the rule has been so far carried, in one jurisdiction, in recognizing the law of the domicile, as to enforce a claim of property in slaves (*Madrazo* v. *Willes*, 3 Barn. & Ald., 353; see, also, *Greenwood* v. *Curtis*, 6 Mass., 358; *Com.* v. *Aves*, 18 Pick., 215; *The Antelope*, 10 Wheaton, 66); and so far in another jurisdiction as to hold good a sale of lottery tickets in this State. (*McIntyre* v. *Parks*, 3 Metc., 207.)

There is a close analogy between this case and questions arising as to the authority of the master of a vessel to bind his owners in a foreign port.   Though the solution of the

latter depends upon the rules of the maritime law more particularly, yet the relation of the master and the owners is but a branch of the general law of principal and agent, and so the ultimate reason of each starts from the same root. It is not a new doctrine, that a master of a vessel cannot bind her owners, in a foreign port, to any greater liability than will be recognized by the law of their domicile; (*Pope* v. *Nickerson*, 3 Story, 465.) And the rule there laid down has been recognized and applied in the Court of Queen's Bench, on the principle that the power of the master to bind the owners personally is but a branch of the general law of agency; (*Lloyd* v. *Guibert*, 6 Best & Smith, 100; S. C., in Exch. Ch., id.) That case, also, in its reasoning, recognizes the distinction, which we have stated, between the law which is to affect the question of the authority to make a contract, and that which is to determine the validity and effect of the contract when made. It was urged there, too, by counsel, but without effect, that the law of the place where the contract was made, and of the place where it was to be performed, was different from the law of the domicile of the defendants. It was also urged that the contract entered into was *bona fide*, in the ordinary course of business by the master, and within the scope of his ostensible authority to contract; and that his power could not be narrowed by provisions of foreign law, unknown to the party dealing with him, more than by secret instructions; but urged without avail. So, also, in the case of *The Moxham*, in the English Court of Appeal (Law Rep., 1876, part 6, June 1, p. 107), it is pertinently said: " One can understand that a contract between master and servant, or the relations between principal and agent, may affect a contract made by the agent, *qua* agent, with foreigners; that is to say, it may affect the nature and extent of his agency."

So, too, in actions of tort, it has been held that an extra-territorial law will furnish a defense in the courts of England. (*Philips* v. *Eyre*, Law Rep., 6 Q. B., 1.) It is said that an act committed abroad, if valid and unquestionable by the

law of the place, cannot, so far as civil liability is concerned, be drawn in question elsewhere, unless by force of some distinct, exceptional legislation. (See, also, *Dobree* v. *Napier*, 2 Bing. N. C., 781.)

The effect of the judgments in these cases is this: That where the essentials of a contract made under foreign law, are not hostile to the law and policy of this State, the contract may be relied upon and availed of in the courts of this State. If the substance of the contract is against that law and policy, our judicatories will refuse to entertain it and give it effect. Hence, the contract of partnership made by Sarria, in Cuba, may be availed of by him here.

It is contended by the plaintiffs that Sarria did not comply with the Spanish law, inasmuch as he acted under a private writing which was not registered.

The fact as found is, that the instrument was *escritura publica,* or a public writing, and such is the proof. It was found that it was not registered, yet it is also found that the omission to register did not make him liable as a general partner. There is some conflict or confusion in the testimony of the experts in Spanish law upon this head, yet the preponderance, both in volume and clearness, is on the side of the finding.

A point is made, that Sarria did not comply with the Spanish law, in that he failed to pay in cash the $110,000 which was the stipulated capital to be furnished by him. The referee's finding is explicit on the subject. The testimony is to the effect that it was paid in, in cash, property, effects and good credits. The provisions of the Spanish law do not require that it shall be contributed in cash alone. I feel constrained to say, that an examination of the testimony and book accounts of the defendants on this head is not very satisfactory of the contribution of a real available capital; and serves to convince that the requirement of our statute is the wisest, of cash alone as a payment from the limited partner. Yet there is testimony to uphold the finding. I am not able to agree with the position of the plaintiffs, that the

exemption claimed by Sarria is contrary to the policy of our law, and that by reason thereof, and by the fact that the capital was not put in in cash, he should be precluded from it in this forum. As said before, the two laws aim at the same end, though differing in details, wherein I think that our statute is the wisest. The general policy is the same.

Our conclusion is, that Sarria may have the benefit in our courts of the provisions of the law of his domicile ; and may set up his limited liability as a special partner against the claim of the plaintiffs.

It is suggested that these views are in conflict with the rule declared in *Leggett* v. *Hyde* (58 N. Y., 272.) We are not of that mind. In that case, the sole question was, whether Hyde was a partner or a creditor of the firm which was sued. And after a review of the old cases in England, and of the cases in this State, it was announced, as the law of this State, that a participation in the profits of the business, as such, with certain exceptions, made the participator, a partner as to third persons, creditors of the firm. It was conceded that the rule had been deviated from in England; and *Cox* v. *Hickman* (*supra*) was cited to show that the English courts were now more disposed to rest, for the fact of partnership upon the answer to the inquiry: Did there exist the relation of principal and agent between the alleged partner and the conceded members of the firm, and were they, in their conduct of the business, acting for his benefit therein? It is plain, that when once the existence of a partnership is established, whether in accordance with the rule in this State or with the modern English rule, then the relation of principal and agent comes in between the members of the firm, so that it is not inconsistent with the doctrine of *Leggett* v. *Hyde* to cite here and rely upon so much of the doctrine of *Cox* v. *Hickman*, as declares that the relations of the members of the firm are as those of principal and agent. *Leggett* v. *Hyde* does not admit that those relations must be shown to exist before a partnership is established, and it does not, by any implication, deny that they exist, when other facts and rela-

tions have established the fact of a partnership. And *Cox* v. *Hickman* may be cited to show that the relation of partners is materially that of principals and agents, without yielding to its doctrine, that the proof of the existence of the partnership is in the fact of that relation, and the benefit from it. So that we may cite *Cox* v. *Hickman*, for the purpose for which we have used it, without in the least impugning *Leggett* v. *Hyde.*

This case is novel in our courts. Some decisions are cited by the defendant which go to sustain our conclusion, and the judgment of respectable text writers thus inclines; (*Burrows* v. *Downs,* 9 R. I., 446; *Cutter* v. *Thomas,* 25 Vt., 73; *Hastings* v. *Hopkinson,* 28 Vt., 108; Story Confl. L., § 320 [a], Redf. add.; Wharton Confl. L., §§ 468, 469, 470; Westlake Priv. Int. Law, arts. 211, 220, 222.

The judgment should be affirmed.

All concur.

Judgment affirmed.