[Civil No. 2746. Filed November 26, 1928.]

[274 Pac. 155.]

DAVID A. FORGAN, CHARLES W. FOLDS, JOHN D. LARKIN, C. W. SEABURY, B. A. Mc-DONALD, A. E. DUNCAN, WILLIAM H. GRIMES, R. WALTER GRAHAM, and JAMES C. FENHAGEN, Operating as THE COMMER-CIAL CREDIT TRUST, a Common Law Trust, Appellants, v. C. O. BAINBRIDGE, Appellee.

Messrs. Fred Blair Townsend and Earl F. Drake, for Appellants.

Messrs. Armstrong, Lewis & Kramer, for Appellee.

LOCKWOOD, J.—Appellants herein, plaintiffs in the lower court, brought an action in replevin against appellee, defendant below, to recover the possession of a certain Cadillac automobile or the value thereof. At the time of the trial it was stipulated that the automobile was in the possession of defendant, and

plaintiffs announced that they waived a return of the car and sought a recovery of its value. The case was tried upon an agreed statement of facts to the court, and judgment was rendered in favor of plaintiffs in the sum of $760, with interest. From this judgment they have appealed.

The following is the statement of facts upon which the case was determined by the lower court:

"On June 30, 1925, one Floyd Tallmadge, the then buyer of the automobile involved in this replevin action, made, executed and delivered to the seller of the car a purchase money chattel mortgage upon said car. Shortly after the execution of said mortgage, the mortgagee therein named, sold and assigned said mortgage to the plaintiffs in this action, a common law trust, legally organized and entitled to do business in the State of Illinois.

"Within ten days after the execution of said mortgage, and within the time required by law, the said assignees, plaintiffs herein, caused said mortgage to be properly recorded in the county of the place of the residence of the mortgagor.

"It is agreed that said mortgage after said recordation was according to the laws of Illinois, a valid lien on said automobile, in favor of plaintiffs, and good against any subsequent purchaser of said car within that state, and that said mortgage still remains undischarged of record.

"At the time of the commencement of the suit herein there was past due and payable to the plaintiffs in connection with the purchase money note and said mortgage aforesaid, if valid, as against the defendant herein, the sum of one thousand seven hundred twenty-two and 76/100 dollars ($1,722.76), together with interest from November 30, 1925, at seven (7) per cent. per annum.

"After making the first few payments of the purchase price, Floyd Tallmadge, the buyer of said car, without the knowledge or consent of plaintiffs, removed the automobile in question to the state of Texas, where on January 2nd, 1926, he was arrested as a fugitive from justice, by parties other than the

plaintiffs. That the said Tallmadge was brought before the justice of the peace from whose court the warrant was issued, and his bail fixed in the sum of one thousand dollars ($1,000.00).

"That the said Tallmadge induced one L. Bibb to go upon his said bail bond, with one Lee Thompson, for the said sum of one thousand dollars ($1,000.00), and the said L. Bibb consented to do so in consideration of the delivery to him of the said Cadillac automobile, together with a bill of sale thereto, conditioned that in case the said Floyd Tallmadge did not appear and answer the said complaint, said bill of sale would become absolute and effective as of the date of the entering of the default of the said Floyd Tallmadge.

"That the said bill of sale was made, executed and delivered to the said L. Bibb, without actual notice of any prior existing lien or claim against said car. That the records of the county of El Paso, Texas, at that time were searched and disclosed no conditional sale contract, no chattel mortgage, nor other instrument of record showing an adverse claim or lien against the car.

"That the said Floyd Tallmadge defaulted upon the aforesaid bond, and on the 14th day of January, 1926, the default of the said Tallmadge was legally entered and a judgment ordered taken against the said L. Bibb and his co-surety, Lee Thompson, for one thousand dollars ($1,000.00).

"That said Floyd Tallmadge has never surrendered himself upon the aforesaid complaint, and said L. Bibb is not aware of his whereabouts, nor where he may be found.

"That thereafter, on the 18th day of February, 1926, in the city and county of El Paso, state of Texas, said Tallmadge failing to appear and make any claim to said car, said L. Bibb executed a bill of sale to the defendant, C. O. Bainbridge, to the aforesaid car, and at said time delivered said car to C. O. Bainbridge.

"That at the time of the transfer and sale of the said automobile described in the aforesaid bill of sale to the defendant, C. O. Bainbridge, there was upon

record in the office of the county recorder of El Paso county a copy of the chattel mortgage in question.

"That said mortgage provides that the mortgagee shall have the right to the possession of the said automobile as soon as any default in the payment of said mortgage shall have occurred.

"Subsequently defendant brought said automobile to Maricopa county, Arizona, where plaintiffs located it in the possession of defendant, and after demand and refusal filed this action for its recovery or the value thereof.

"It is agreed that at the time of the commencement of this action the automobile was reasonably worth seventeen hundred sixty dollars ($1,760.00), in accordance with the valuation in the automobile dealers 'Blue Book' for the month of April, 1926, it being the intention of the parties that said Blue Book estimate shall be the sole basis for calculation of value."

It is the contention of plaintiffs that their mortgage, having been properly recorded in the state of Illinois, was a valid and prior lien on the automobile, superior to any rights arising through the bill of sale made by Tallmadge in the state of Texas. Defendant insists, on the contrary, that, under the laws of Texas, the place where the bill of sale was executed, the latter was superior to the Illinois mortgage. The question is of considerable importance, and involves the public policy of the state of Arizona, in regard to the application of the rule of comity.

It is the law in almost every state of the Union that, where a chattel mortgage on personal property is duly recorded in the state where the property is located at the time, and the owner of the property removes it to some other state without the consent of the holder of the mortgage, such holder may follow the property into the other state and recover it from an innocent purchaser for value without notice in the same manner as he could in the state where the mortgage was given. 11 C. J. 424, and cases cited. In so far as we can determine, there are but four states which do not

recognize this doctrine, among them being the state of Texas. Therein it is held that the rights of the innocent purchaser are superior to those of the holder of the foreign mortgage. *Consolidated Garage* v. *Chambers*, 111 Tex. 293, 231 S. W. 1072; *Wooten* v. *Arnett Auto Parts Co.*, (Tex. Civ. App.) 286 S. W. 667. The state of Illinois follows the general rule on the subject. *Mumford* v. *Canty*, 50 Ill. 370, 99 Am. Dec. 525; *Wolf* v. *Shannon*, 50 Ill. App. 396; *Armitage-Herschell Co.* v. *Potter*, 93 Ill. App. 602.

The question has never been before the courts of Arizona in this precise form. We have, however, held that a conditional vendor may recover his property under like circumstances from an innocent purchaser of the property in Arizona in conformity with the provisions of the Uniform Conditional Sales Act. *Bradshaw* v. *Kleiber Motor Truck Co.*, 29 Ariz. 293, 241 Pac. 306. It is true this particular decision was based upon the language of the statute. The legislature, however, by adopting this statute, has impliedly approved of the principle of the majority rule, and we see no reason logically why, if it applies to conditional sales, it should not to chattel mortgages. The effect, if the Texas rule were generally adopted, is well set forth in the following quotation from *Bonin* v. *Robertson*, 2 Terr. L. 21–30; 11 C. J. 425:

"If the contention of the plaintiff here were to prevail, then once chattels come across our boundary it is only a question of speed between the mortgagee in his pursuit after the fly-by-night mortgagor and this usually alert individual in finding an innocent purchaser obligingly ready to purchase without too much inquiry or too many troublesome questions, the property he has brought with him in his flight."

The same principle is well stated in *Motor Inv. Co.* v. *Breslauer*, 64 Cal. App. 230, 221 Pac. 700:

"A state may, it is true, refuse to recognize the rule of comity in such cases, but should it do so, it

would become a party to every such fraudulent transaction. It is not going too far to say and to hold that it is preferable. and more desirable that an innocent purchaser or encumbrancer of personal property brought into a state under such circumstances as those characterizing the transaction with which we are here concerned should suffer loss, which possibly his own improvidence or want of diligence has brought to him, than that the state should assume and maintain an attitude towards such transaction which would necessarily stigmatize it as an accessory after the fact to the fraud inhering therein.''

We therefore hold the law of Arizona to be in consonance with that of the great majority rule, to the effect that, when personal property encumbered by a mortgage valid as against a subsequent innocent purchaser in the state in which the property was. located when the mortgage was given is surreptitiously removed to this state, the mortgagee may follow the property, and his rights are superior to those of a similar purchaser within this state, in the absence of a statute providing to the contrary.

But it is contended that, notwithstanding this may be the law of Arizona, since the state of Texas, where the alleged bill of sale was made, has held to the contrary, and since such bill of sale in Texas would be held superior to the mortgage, we are bound under the rule of *lex loci contractu* to hold the former superior in this state. It is fundamental that no law has any effect of its own force beyond the limits of the sovereignty from which its authority is derived, and the extent to which the law of one state or nation is allowed to operate within the domain of another depends upon what is commonly called the comity of nations. *Huntington* v. *Attrill,* 146 U. S. 657, 36 L. Ed. 1123, 13 Sup. Ct. Rep. 224; *Hilton* v. *Guyot,* 159 U. S. 113, 40 L. Ed. 95, 16 Sup. Ct. Rep. 139. And so far as the rule of comity is concerned, except as otherwise qualified by the Federal Constitution, the

states of the Union are considered as foreign nations, and separate sovereignties. *Pennoyer* v. *Neff,* 95 U. S. 714, 24 L. Ed. 565; *Williams* v. *Kimball,* 35 Fla. 49, 48 Am. St. Rep. 238, 26 L. R. A. 746, 16 South. 783; *Hill* v. *Spear,* 50 N. H. 253, 9 Am. Rep. 205. The law as to the validity and interpretation of personal contracts is that of the place where they were made, the *lex loci contractu,* unless the parties thereto intended they should be governed by the law of some other place. *Bank of Augusta* v. *Earle,* 13 Pet. 519, 10 L. Ed. 274; *Davis* v. *C., M. & St. Paul Ry. Co.,* 93 Wis. 470, 57 Am. St. Rep. 935, 33 L. R. A. 654, 67 N. W. 16, 1132; 5 R. C. L. 931.

Since, however, the law of one state has no effect *ex proprio vigore,* beyond the limits of that sovereignty, the contract can only be enforced in a foreign state when it is not contrary to the public policy of the state of the forum. *International Harvester Co.* v. *McAdam,* 142 Wis. 114, 20 Ann. Cas. 614, 26 L. R. A. (N. S.) 774, 124 N. W. 1042; *Green* v. *Van Buskirk,* 5 Wall. 307, 18 L. Ed. 599; *Studebaker Bros. Co.* v. *Mau,* 14 Wyo. 68, 82 Pac. 2; *Flagg* v. *Baldwin,* 38 N. J. Eq. 219, 48 Am. Rep. 308. As we have previously pointed out, the Texas rule in regard to the priority of the bill of sale over the mortgage in question is different from ours. Are we bound, therefore, under the rule of comity, to give effect to the former in accordance with the law of Texas?

The rule of comity is essentially based upon the principle of reciprocity. It is the necessary intercourse of the subjects of independent governments which gives rise to a sort of compact or understanding that their municipal institutions shall receive a degree of reciprocal efficacy and sanction within their respective dominions. *King* v. *Sarria,* 69 N. Y. 24, 25 Am. Rep. 128. It would seem, therefore, that, when a sister state does not recognize and will not enforce in her courts our rule of law in regard to a

certain class of contracts having their inception in this state, we are not required under the doctrine of comity to enforce similar contracts according to her rule, when such rule is directly opposed to our public policy. A contrary doctrine would be in effect a requirement that our courts should discriminate against our own citizens.

The Supreme Court of Wyoming had before it a situation very similar to the one involved herein in the case of *Union Securities Co.* v. *Adams,* 33 Wyo. 45, 50 A. L. R. 23, 236 Pac. 513. After reviewing the authorities, the court says:

"We have reviewed most of the authorities which we have been able to find upon the subject at hand and from this review it clearly appears that the principle of comity is throughout the civilized world based upon mutuality and reciprocity, and where it appears that no such reciprocity is extended, none is, generally, granted in return. It may be that in actions of tort which are transitory, which involve only the original parties to the transaction and which are based upon a wrong that perhaps ought not to be condoned, the rule should be otherwise. See *Wabash R. Co.* v. *Hassett,* 170 Ind. 370, 83 N. E. 705. But in the case at bar injury would be inflicted upon an innocent purchaser, a citizen of the state of Wyoming, if the lien of the mortgage in question were upheld. Such lien, as hereinbefore shown, can be sustained only upon the principle of comity. It cannot be done upon any other principle of law. We are loath to restrict that principle. We believe that it should be applied wherever it is reasonably possible to do so, and we took occasion recently in the case of *Continental Oil Co.* v. *American Co-operative Assn.* [31 Wyo. 433], 228 Pac. 503, to apply it to a case in which it had not previously been applied in this state. Living in a Union of forty-eight states, obedient to the same flag, speaking the same language, having largely the same customs, and following the same pursuits, it should be the policy of every state to extend rather than to limit the doctrine of comity. But we must

necessarily pause, and hesitate to apply it in a case like that at bar where we can find no possible justification for it, and where the decision, necessarily resulting in an injury to a citizen of this state, would find no basis in any sound principle of law. Let us bring the case nearer home. Suppose one of our neighboring sister-states should refuse to reciprocate in treating as valid Wyoming mortgages duly filed of record in accordance with our laws, as against innocent purchasers in that state. We have no doubt that such holding would have a tendency to increase unlawful removals of mortgaged automobiles and other personal property from this state to that. If we should still continue to apply the principle of comity without reciprocity, we should not alone injure citizens of this state, whose protection is our first duty, but we should also, indirectly, encourage such unlawful removals and dishonest conduct. That, so far as in us lies, we shall not do.''

Let us assume plaintiffs in this case were citizens of Arizona, and the chattel mortgage in question had been made in this state instead of in Illinois. Would it be contended that, because the mortgagor had surreptitiously removed the auto to Texas and sold it to an innocent purchaser, the latter could then bring it back to Arizona and hold it against the mortgagee, cleansed by the immunity bath of the Texas law from our lien? The strongest upholder of the doctrine of comity could hardly demand such a conclusion. The local law would certainly prevail over that of the foreign sovereignty.

But, it will be urged, the mortgage was an Illinois one. In that case we have two foreign litigants, the first claiming possession of the auto under the law of Illinois, the other demanding it under the law of Texas. Neither law, *ex proprio vigore,* has any force in Arizona. Any effect our courts give the one or the other is under the rule of comity. The only possible reason why we should recognize the Texas rather than the Illinois title is that the auto was

brought here directly from the former state. In other words, that a title coming from a party in possession, valid under the laws of the state where it is made, wipes out all former liens and titles, no matter what they are, or how they originate. We repudiate such a doctrine when the former lien is an Arizona one, and the conflicting foreign title is based on a theory of law opposed to our own.

The Illinois law in regard to the comparative rights of foreign mortgagees and local purchasers is the same as ours. That state would protect Arizona mortgagees against its own citizens. We would do the same as to its mortgagees. Texas, on the other hand, would deny the rights of both Arizona and Illinois mortgagees. If we applied to our own title and lien holders the theory that passing the *res* through Texas extinguished the rights of our own citizens, arising under our laws, it might be said with propriety that the same rule applied to the Illinois mortgage. But, when we deny the rule in the one case, logic and justice would seem to deny it in the other. In doing so we do not depart from the rule of comity, but merely choose between two conflicting and independent titles, and give effect to the older title acquired under a law similar to ours, rather than to the later one, obtained by virtue of a principle we repudiate.

The Supreme Court of the United States says, in *Harrison* v. *Sterry et al.*, 5 Cranch (9 U. S.) 289, 3 L. Ed. 104:

"The law of the place where a contract is made is, generally speaking, the law of the contract, i. e., it is the law by which the contract is expounded. *But the right of priority forms no part of the contract itself*. It is extrinsic, and is rather a personal privilege dependent on the law of the place where the property lies, and where the court sits which is to decide the cause."

So in this case we do not question the interpretation placed by the Texas courts on the bill of sale from Tallmadge to Bibb, nor that, in Texas, it gave the latter a good title against the mortgagee, any more than we question that the Illinois mortgage gave, in that state, a right superior to that of defendants. We are called on merely to determine which title is entitled to priority under our laws, and, on the grounds that the Illinois title was acquired in a manner in harmony with our law, and the Texas title in one repudiated by us, and that Illinois grants to us the reciprocity which Texas denies, we think a true interpretation of the rule of comity requires that we recognize the priority of the Illinois title.

In view of our statement of the law of Arizona as above, it is not necessary that we consider the other questions involved in this case. It is ordered that the judgment of the trial court be reversed, and the case remanded to the superior court of Maricopa county, with instructions to enter judgment in favor of plaintiffs in accordance with the opinion expressed herein.

McALISTER, J., concurs.

ROSS, C. J. (Dissenting).—I am very sorry that I cannot agree with the opinion of the majority.

By the transaction in Illinois, Tallmadge became the owner of the automobile, the seller retaining a lien thereon for the balance of the purchase price; such lien being evidenced by means of a chattel mortgage, properly made out and recorded as required by the laws of that state. The parties to this instrument were all in that state at the time, as was also the property. The contract was intended to be performed in that state. Hence the law of that state governs in the matter of its exposition and construction.

It is stipulated that under the laws of Illinois the mortgagee's lien in that state was good as against any subsequent purchaser of the car. It was removed, however, from the state by the purchaser, Tallmadge, without the knowledge or consent of the mortgagee, into the state of Texas, and in the latter state disposed of to one L. Bibb in the manner set out in the stipulation.

The lower court held, and I think properly, that the transaction between Tallmadge and Bibb was not a sale to Bibb, but a pledge to him of the car as security against his contingent liability on Tallmadge's bail bond. This contingent liability became fixed when judgment was entered against him on the bail bond. This liability was incurred in consideration of the automobile being turned over as security to Bibb, who at the time had no actual or constructive knowledge or notice of the Illinois chattel mortgage lien, it at this time not having been recorded in El Paso county, Texas, where the transaction between Tallmadge and Bibb took place. Bibb, at El Paso, sold and delivered the car to defendant, Bainbridge, who, it is stated by the trial court, was a resident of the state of Arizona.

At the time this suit was brought, the title of the car was still in the mortgagor, Tallmadge, and the attempted sale by Bibb to Bainbridge was ineffectual to pass such title, but did have the effect of an assignment of the pledge from Bibb to Bainbridge. We then have the Illinois mortgage lien good against the world in that state and good in Texas as between the mortgagee and the mortgagor and also the lien created by the pledge to Bibb and by him transferred to defendant, Bainbridge. The question is whether the chattel mortgage lien or the pledge should be given precedence in this jurisdiction. The trial court held both liens valid, but gave precedence to the

lien created in Texas, which was for $1,000, and gave judgment against Bainbridge on his redelivery bond for the balance of the stipulated value of the automobile, or $760, together with interest and costs.

It is undoubted that in the great majority of the states the rule of comity is observed. By such rule, if the chattel mortgage was valid in Illinois, where it was made and the property located, it would be held valid against creditors and purchasers in good faith in the state to which the property was removed by the mortgagor without the consent of the mortgagee, "unless there is some statute in that state to the contrary, or unless the transaction contravenes the settled law or policy of the forum." 11 C. J. 424, § 33.

Under the decisions of the courts of Texas, construing their relevant statutes, it is held that a chattel mortgage is not good as against creditors and *bona fide* purchasers unless the mortgage is placed of record in the proper county of the state, or unless there is a complete change of possession from mortgagor to the mortgagee. *Consolidated Garage Co.* v. *Chambers*, 111 Tex. 293, 231 S. W. 1072. The Texas statute that the court construed as requiring the holder of a mortgage upon personal property brought into that state to comply with its registration laws in order to protect his lien is article 5655, Vernon's Sayles' Texas Civil Statutes 1914, which is, for all intents and purposes, the same as our paragraph 4126, Civil Code of 1913, which was probably copied from Texas. In the above case the court quoted from Chief Justice MARSHALL, in *Harrison* v. *Sterry,* 5 Cranch 289, 3 L. Ed. 104, to the effect that "the right of priority forms no part of the contract. . . . It is extrinsic, and is rather a personal privilege, dependent on the law of the place where the property lies, and where the court sits which is to decide the cause." Also from

*Snyder* v. *Yates,* 112 Tenn. 309, 105 Am. St. Rep. 941, 64 L. R. A. 353, 79 S. W. 796, as follows:

"When parties to a foreign contract are impleaded in the courts of this state, this court will expound and enforce the contract according to the laws of the country where it was made, if such laws are properly pleaded and proven; but it will not, in a question of priority, set aside its own statutes and rules to the prejudice of its own citizens."

The court then stated:

"Also, the policy of this state is expressed by our statutes—articles 5654 and 5655, Vernon's Sayles' Texas Civil Statutes—that a mortgage of chattels, including conditional sales, is void as against third persons innocently purchasing the property for value, unless it is duly registered as provided therein.

"Plaintiff in error insists that it is a hard rule to deprive him of his reservation of title or lien upon the property without any negligence on his part. Also, it is a hard rule to deprive an innocent purchaser for value of the property when he has been at no fault. The difference between them is this: While it works a hardship upon the mortgagee, yet he trusts the property to the possession of the mortgagor, and thereby puts it within the power of the mortgagor to dispose of the property to one who has no notice of his claim. The mortgagee takes the risk incident to such possession, and while he has done no wrong and may not be negligent in regard to trying to protect his rights in the property, yet he makes it possible for a third person to be defrauded if it should be held that the rights of the third person are subject to his prior claim, of which said purchaser has no knowledge or notice.

"An innocent purchaser for value has no means of protection whatever against a private or secret unregistered reservation of title in chattels, whether made in this state or out of it."

In *Thayer Merc. Co.* v. *First Nat. Bank,* 98 N. J. L. 29, 119 Atl. 94, the court said:

"As a general rule, a transfer of property valid where made, is effectual everywhere; but a universal recognized exception to this rule is that, where it is opposed to some statutory policy of the state of the *rei sitae,* and where it is sought to be enforced, the statute is paramount, and the rule is nullified thereby. *Varnum* v. *Camp,* 13 N. J. L. 326, 25 Am. Dec. 476; *Moore* v. *Bonnell,* 31 N. J. L. 90; *Bentley* v. *Whittemore,* 19 N. J. Eq. 462, 97 Am. Dec. 671. And so where a state, in the exercise of its sovereign power, regulates by positive law the disposition of personal property found within its borders, and prefers its own attaching creditors to a foreign assignee of a chattel, or the conditional vendor thereof, the statutory right conferred upon the resident creditor overrides the rights of such assignee or conditional vendor vested in him by the law of the forum where the contract was made."

If the contest was between the mortgagee and the mortgagor, or between the former and some purchaser from the mortgagor in the state of Arizona, and no consideration of the Texas transaction was involved, I should feel that the proper thing for this court to do would be to adopt the general rule of comity and uphold the priority of the Illinois mortgage. Under the Texas law, however, if Tallmadge had sold the car to Bibb the latter's title would have been good. Likewise Tallmadge, being in possession of the car, with the *indicia* of ownership, had the right under the Texas law to pledge it to Bibb, and the latter's lien, if he took it without notice and in good faith, was superior to the unrecorded Illinois mortgage. It seems to me that, if we now apply to this controversy the rule of comity, we are undertaking to do for Texas what we think she herself should have done. We are ignoring a perfectly valid and subsisting lien against this property under the Texas law in favor of Bainbridge, and saying, in effect, that the public policy of a sovereign sister state, in requiring the observance of registration laws

in the selling or encumbering of personal property is entirely wrong, and that we will right it.

I have looked very carefully into the decisions, and I can find but one case exactly in point (cited by appellee), and that case accords with my views as above expressed. *Fuller* v. *Webster,* 5 Boyce 538, 95 Atl. 335. The decision is by a superior court of Delaware, but it was appealed to the Supreme Court (6 Boyce 297, 99 Atl. 1069), and there affirmed upon an equal division of the judges. Because of its being an opinion of an inferior, and the affirmance by a divided, court, it may be said that it is not of much value as authority. However, it appears to me to be a correct and satisfactory solution of a rather difficult question. The fourth syllabus of that opinion states the facts and the law, and reads as follows:

"Where the vendee of an automobile conditionally sold in Massachusetts, where such contracts are recognized as valid against third persons, took the same into Pennsylvania, where such contracts are not so recognized, and sold to a third person with notice, who sold to defendant, a *bona fide* purchaser without notice, who brought the car into this state, where such contracts are recognized as in Massachusetts, the defendant's title to the car was indefeasible, since he had purchased in Pennsylvania, under the rule that the *lex loci rei* determines the status of personal property."

This case has been cited by two subsequent cases upon the point that the law of the place where personal property is located determines its status. *Goetschius* v. *Brightman,* 245 N. Y. 186, 156 N. E. 660; *Fry Bros.* v. *Theobold,* 205 Ky. 146, 265 S. W. 498.

I think the judgment should be affirmed.