## RHINEHART v. SOUTHERN PAC. CO.
### No. 1027.

District Court, S. D. California, Central Division.

April 7, 1941.

Paul D. Holland, of Los Angeles, Cal., for plaintiff.

T. H. Sword, O. O. Collins, and Frank Karr, Chief Counsel, all of Los Angeles, Cal., for defendant.

O'CONNOR, District Judge.

This was a suit for damages to plaintiff's packing shed alleged to have been destroyed as the result of a fire caused by defendant's locomotive.

The main issues to be considered are: (1) was the conflagration the result of sparks from defendant's locomotive; (2) if so, was defendant negligent in allowing

sparks to escape to plaintiff's structure; and (3) if negligent, is the defendant liable under the terms of the leasing agreements.

The undisputed evidence shows that the plaintiff owned a packing shed and its contents which were located on defendant's property at Eloy and adjacent to defendant's line between Casa Grande and Tucson, Arizona. Plaintiff's assignor entered into a lease for these premises on May 10, 1933.

Shortly after 5 A.M. on the day in question, defendant's employees entered the spur track with a locomotive and began switching operations close to plaintiff's building. Within the next forty minutes, defendant's engineer and fireman observed smoke and fire coming from the east end of plaintiff's shed. Evidence indicated that there was a broken window on the easterly side of plaintiff's building and a breeze was blowing in a general northeasterly direction on the morning of the fire.

Plaintiff testified that there was an electric motor and wiring in the building and a quantity of moss to be used in packing asparagus, located directly under the broken window. There was no evidence to show that this type of moss was likely to combust spontaneously. Nor was there any evidence to show that the wiring was in such a defective condition that it would be likely to cause a fire. The building was locked when the fire broke out and there was no one inside.

The chain of events is linked together in such a manner as to exclude any other proximate cause of the fire than the locomotive which was adjacent to the plaintiff's structure.

The evidence showed that the locomotive was there, that it was an oil burning type, that some locomotives of this type had spark arresters, but that this one was not so equipped. There was no direct evidence to show that this locomotive threw the sparks that caused the fire. Indeed, the two witnesses for the defendant, the engineer and fireman, testified that they had never known of an oil burning locomotive to throw sparks and one had been in the railroad business for 30 years. This testimony seems irreconcilable with the admitted fact and stipulation that some locomotives of this type were equipped with spark arresters. Why have them otherwise? They must serve some useful purpose, and it must be conceded that they are used to prevent sparks from escaping.

The evidence in this type of case is, at best, purely circumstantial. Plaintiff can usually do no more than show that there were circumstances giving rise to a presumption that the reasonable and probable cause of the fire was defendant's locomotive and produce evidence tending to exclude the possibility of the fire having been caused by other means. This problem is discussed in an article by Harper, "Establishing Railroad Liability for Fires" (1929) 77 U. of Pa. L. R. 629, which also collects the leading cases on the subject.

It must be assumed, in the light of the prevailing views and leading cases, that the plaintiff showed that the cause of the fire was the emission of sparks from defendant's locomotive and that it was negligent in failing to prevent their escape to plaintiff's building.

We come now to the third issue in this case—assuming the railroad to have been negligent, was it liable under the terms of the two contracts?

Exhibit 2 for the plaintiff was a spur track agreement entered into on November 12, 1926, between the defendant railroad and the plaintiff's assignor. The two paragraphs of said contract relevant to this case are as follows:

"4. Said track shall be under full control of Railroad, and may be used at discretion of Railroad for its business or for shipment or delivery of any freight, but not to the detriment of the business of the undersigned.

"6. Undersigned hereby releases and discharges and agrees to indemnify and save harmless said Railroad, its agents, successors and assigns, from all liability for destruction of, or damage to any property of the undersigned and any property in the possession or custody of the undersigned by fire resulting directly or indirectly from the operation of said track by Railroad, its agents, successors or assigns."

Exhibit 3 for the plaintiff was a lease entered into on May 10, 1933, between defendant railroad and plaintiff's assignor. This lease provided in part as follows:

"Lessee covenants and agrees:" * * *

"6. To assume all risk of loss, damage or destruction to buildings or contents, or to any other property brought upon or in proximity to the leased premises by the Lessee, and to any property brought upon the leased premises by any other person with the knowledge or consent of the Lessee,

by fire of any origin, whether such fire shall be caused by the negligence of the Railroad Company or its employes or otherwise, and the Lessee hereby agrees to indemnify and hold harmless Railroad Company and its lessors from and against any and all liability, causes of action, claims or demands which any person may hereafter assert, have, claim or claim to have, arising out of or by reason of any such loss, damage or destruction, including any claim, cause of action or demand which any insurer of such building or other property may at any time assert, or undertake to assert, against the Railroad Company."

Both exhibits referred to were signed by the plaintiff-assignee in his capacity as a partner in the company which originally entered into them and both contained clauses stating that they should be binding upon the successors and assigns.

The question might be raised as· to whether or not contracts exempting from liability for negligence are against public policy. This problem is generally discussed in 17 C.J.S., Contracts, § 262. In this section it is stated: "Indemnity contracts. A contract whereby the indemnitee is saved harmless from the consequences of the negligence of the indemnitor or his agents, or from the consequences of the negligence of the indemnitee or his servants toward third persons, is not illegal or void as against public policy."

51 C.J., Railroads, section 1313, pp. 1183, 1184, states: "While a railroad company may not contract for exemption, wholly or partially, from liability for damages caused by fire, in derogation of its duty to the public as common carrier, in its private capacity as owner of property, it may, by a valid contract, be relieved from liability for damages by fire caused by its negligence. Accordingly, a railroad company may provide for such exemption as a consideration of permitting another to erect and use buildings or store property on its right of way, depot grounds, or other lands owned by it, provided the contract does not embrace property for the injury or destruction of which the company is liable as a common carrier. * * *"

Another discussion of this same problem is found in 22 Am.Jur., Fires, sections 59–63 wherein it is stated that a railroad may contractually exempt itself from liability for damages caused by fires upon its right of way, even though such fires are due to negligence. Section 63 says: "* * * it is generally held that where, in an agreement for the construction of a spur track, there is a stipulation that the railroad company will be exempt from liability for fire communicated from its locomotives to buildings belonging to the shipper, the exemption applies to fires caused by sparks from engines operating on the main line of the railroad."

■.■ Contracts such as the one involved here are not against the public policy of Arizona, and it is the law of Arizona that is applicable. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487; Title 28 U.S.C.A. § 725; Forgan v. Bainbridge, 34 Ariz. 408, 274 P. 155, 158; Schram v. Smith, 9 Cir., 1938, 97 F.2d 662, 664.

The next question for consideration is whether or not the two agreements involved here come within the general rules upon this subject. The plaintiff contends that the provisions of paragraph "6" of each agreement are modified or nullified by paragraph "4" of the spur track agreement, quoted supra.

Paragraph "4" provides in substance that when the railroad used the spur track on its own business it was not to use it in such a way as to be detrimental to plaintiff's business. Plaintiff's business was the packing and shipping of asparagus. Although the acts considered to be detrimental to plaintiff's business were not set forth, if the railroad had used the spur track for parking freight trains for long periods of time so that plaintiff was prevented from shipping merchandise and it deteriorated as a result of the delay, it could be said that this particular use would be detrimental to plaintiff's business. It would seem that this was the type of detriment covered by paragraph "4" of the spur track agreement.

This provision could not be construed to mean that the plaintiff contracted against a detriment to his business caused by fire resulting from railroad operations because provision "6" of each agreement, quoted supra, specifically mentioned this possibility and the plaintiff further agreed to release and indemnify the railroad and hold it harmlesss from any liability for damages caused by fire.

Further, the lease agreement (Exhibit 3) does not contain the paragraph "4" quoted above or any similar provision restricting

the use of the railroad company on the spur track.

In support of his position, plaintiff cites the case of Danzer & Co., Inc., v. Western Maryland Ry. Co., 1933, 164 Md. 448, 165 A. 463. This case is similar in many particulars to the one involved here, but may be distinguished in that the clause of the contract of the Danzer case fixing the rights of the railroad to the use of the track was different from the clause in the instant case. Again, in the instant case the land on which plaintiff's building and the spur track were located belonged to the railroad which entered into a leasing agreement with the plaintiff respecting their use and the rights and duties of the parties. In the Danzer case, however, the land on which the track was located belonged to the Danzer Co. and was not subject to covenants such as were present in the instant case. There, the railroad's use of the track and land as a switching yard amounted to a trespass and was "tortious and unauthorized". 165 A. pages 468, 469. While here it was agreed that the side track should be under the full control of the railroad to be used at its discretion.

In Southern Pacific Co. v. Fellows, 1937, 22 Cal.App.2d 87, 71 P.2d 75, 77, the court construed a provision in a contract indemnifying the same party defendant involved here, said clause providing that the railroad should be indemnified from and against "any and all claims, loss, damage, injury and liability howsoever the same may be caused, resulting directly or indirectly from work covered by this agreement." The court stated that this clause was "so sweeping and all-embracing in its terms that, although it does not contain an express stipulation indemnifying appellant against liability caused by its own negligence, it accomplishes the same purpose." 22 Cal.App.2d page 91, 71 P.2d page 77.

The court further stated at page 91 of 22 Cal.App.2d, and at page 77 of 71 P.2d, that "in construing this indemnity clause and interpreting its meaning, we should be governed by the facts and the surrounding circumstances."

■ This court is of the opinion that the same consideration should govern the interpretation of the contracts in question here. If there is some doubt as to the exact meaning of the clause, it should be construed in the light of the circumstances surrounding its execution and the meaning and intent of the parties when they entered into it. An examination of these contracts indicates that the parties could have had no other object in mind when it was expressly stipulated by the language employed that the railroad should not be liable "for destruction of, or damage to any property of the undersigned and any property in the possession or custody of the undersigned by fire resulting directly or indirectly from the operation of said track by Railroad, its agents, successors or assigns." Exhibit 2, cl. 6, supra.

■■ It is fundamental that a contract must be construed as a whole and the intention of the parties must be gathered from the entire instrument and not from isolated portions thereof. When the document is read as a whole, the meaning of a particular portion frequently becomes clear. The court looks at the entire contract in order to determine the construction, modification, or qualification of any of the parts. Cal.Civ.Code, sec. 1641. The court has the duty of interpreting the contract by ascertaining the intention of the parties as shown by the language used and the circumstances of each particular case with its own peculiar facts. Cal.Civ. Code, sec. 1647, Hunt v. United Bank & Trust Co., 1930, 210 Cal. 108, 115, 291 P. 184; Lemm v. Stillwater Land & Cattle Co., 1933, 217 Cal. 474, 480, 481, 19 P.2d 785.

In Miller Cattle Co. v. Mattice, 1931, 38 Ariz. 180, 298 P. 640, 642, 643, Lockwood, J., mentioned the construction to be given a contract, saying: "The first rule pertinent to the question is that a particular clause in a contract cannot be interpreted as if it stood by itself, but the court must take into consideration the entire contract. Tevis v. Ryan, 13 Ariz. 120, 108 P. 461; O'Brien v. Miller, 168 U.S. 287, 18 S.Ct. 140, 42 L.Ed. 469."

In the case of Aetna Ins. Co. v. Atlantic Coast Line R. Co., 4 Cir., 1935, 79 F.2d 463, 464, the court had an indemnity contract similar to the one in issue here and containing the following provision: " * * * as a further consideration for the location of the said side or spur track it is mutually understood and agreed that the Railroad Company shall be released and discharged and save harmless from any and all liability for damage to property owned by or in possession of the party of the second part in the vicinity of the said side or spur track by fire communicated by the

engines of the Railroad Company while upon the said side or spur track or originating within the limits of the right of way of such side or spur track, or by its engines while upon the main track of the Railroad Company or originating within the limits of the right of way of such main track in the vicinity of the said side or spur track, whether due to negligence or otherwise * * *."

The court stated at page 465 of 79 F.2d:

"The agreement in question was entered into voluntarily by the Railroad at a time when it was under no direct legal obligation to construct the spur track. It was obvious that the construction of the spur track would result in the building of a number of buildings that would be exposed to destruction by fire caused by sparks from the Railroad engines. The Railroad had the right to protect itself from this added hazard, to be occasioned by the construction of the spur track, by a contract, unless such contract was unlawful per se or made unlawful by statute. There was nothing inherently vicious in the contract of exemption from liability. * * * At the time of the making of the spur track agreement the parties were free to make their own bargain as to its construction, and 'the highest public policy is found in the enforcement of the contract which was actually made.' Santa Fe, P. & P. R. Co. v. Grant Bros. Const. Co., 228 U.S. 177, 33 S.Ct. 474, 478, 57 L.Ed. 787. * * *

"The federal courts and a majority of the state courts hold that contracts, in consideration of some privilege or concession granted by a railroad company which it would not otherwise be bound to extend, exempting it from liability for the destruction of buildings, are valid and enforceable." (citing cases).

It is evident, therefore, that from a reading of the release and indemnity clauses and giving to them the interpretation demanded by the words as used in their ordinary meaning, the plaintiff's position is unsound. The language is comprehensive and unambiguous. In regard to the release of the railroad from liability for damage caused by fire, the language is explicit. The damage suffered by plaintiff was just such a hazard as was contemplated by the parties when they contracted and the railroad cannot be held liable for plaintiff's loss.

Judgment for defendant.